**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Lucky Brand Dungarees, LLC, *et al.*,[1] | ) Case No. 20-11768 (CSS) |
| | ) |
| | ) (Jointly Administered) |
| | ) |
| Debtors. | ) **Re: Docket Nos. 15, 180, 233-1, 251** |
| | ) |

**LIMITED OBJECTION AND RESERVATION OF**
**RIGHTS OF COMENITY CAPITAL BANK WITH RESPECT TO THE DEBTORS'**
**(I) NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY**
**CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNTS,**
**(II) SALE TRANSACTION, AND (III) SALE ORDER**

Comenity Capital Bank ("Comenity"), by and through its undersigned counsel, respectfully submits this limited objection and reservation of rights (this "Limited Objection") to the above captioned debtors' (the "Debtors") *Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of the Debtors' Assets, (B) Approving Stalking Horse Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures, and (F) Granting Related Relief, and (II)(A) Approving Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "Sale Motion") [Docket No. 15][2] and *Notice of Potential Assumption and*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Lucky Brand Dungarees, LLC (3823), LBD Parent Holdings, LLC (4563), Lucky Brand Dungarees Stores, LLC (7295), Lucky PR, LLC (9578), and LBD Intermediate Holdings, LLC (7702). The Debtors' address is 540 S Santa Fe Avenue, Los Angeles, California 90013.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Asset Purchase Agreement by and among Lucky Brand Dungarees, LLC, the Other Sellers Party Hereto and SPARC Group LLC (the "APA") attached as Exhibit B to the Sale Motion.

43934185 v3

*Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (the "Cure Notice")

[Docket No. 180] and states as follows:

## INTRODUCTION

1.      Comenity Capital Bank, and Lucky Brand Dungarees, LLC ("Lucky Brand") are parties to a Private Label Credit Card Agreement dated November 28, 2017, as amended (the "Program Agreement") under which Comenity issues private label credit cards (the "Lucky Brand Cards") to qualified customers ("Cardholders") and extends credit to such Cardholders for purchases of Lucky Brand products.   Currently, the proposed Buyer has not yet identified whether it intends to direct the Debtors to assume and assign the Program Agreement in connection with the closing of the sale, and retains the right under the APA to designate contracts for assumption and assignment post-closing.   Due to the nature of the Program Agreement, the Cardholder program cannot function during any "Designation Rights Period," during which Comenity would not be in contractual privity with the owner of the business (and seller of the goods to its Cardholders) and during which the Debtors would not have the information or resources necessary to perform material obligations arising thereunder.   As its rights would be severely prejudiced, Comenity objects to any potential designation of the Program Agreement as a "Designated Contract" under Section 2.7(c) of the APA.

2.      Additionally, to the extent that the Program Agreement is excluded from the Sale, Comenity objects to (a) any sale "free and clear" or impairment of Comenity's rights and license to the Debtors' Trademarks (as defined below) as set forth in the Program Agreement; or (b) any post-closing acceptance of Lucky Brand Cards for purchases or returns.

## RELEVANT BACKGROUND

3.      The Debtors filed the above-captioned cases on July 3, 2020 (the "Petition Date"). The Debtors continue to operate as debtors-in-possession.

**The Program Agreement**

4.      Pursuant to the Program Agreement, Comenity owns and operates a private label credit card program under which Comenity issues private label Lucky Brand Cards to qualified customers and extends credit to such customers to make purchases at Lucky Brand stores or online. Comenity maintains the Cardholders' accounts and owns all payments made by the Cardholders. After a purchase is made on a Lucky Brand Card, Comenity pays Lucky Brand for such purchase (including the sale price and sales tax), net of certain amounts owed to Comenity pursuant to the Program Agreement.[3]

5.      The Program Agreement requires the parties to collaborate in the promotion and maintenance of the private label card program, and sets forth various rights and obligations of the parties, including without limitation:

        a.      Obligations to establish and maintain an "Operating Committee" to address and achieve objectives of the program;

        b.      Obligations of Lucky Brand to comply with defined "Operating Procedures" relating to the program;

        c.      Obligations of Lucky Brand to provide information relating to, *inter alia*, Cardholder disputed charges or potential fraudulent activity;

        d.      Obligations of Lucky Brand to maintain a loyalty program for Cardholders;

        e.      Comenity's rights of recoupment and setoff relating to chargebacks and other amounts payable by Lucky Brand;

        f.      Comenity's rights to use certain of the Debtors' intellectual property, including the use of Lucky Brand intellectual property and trademarks ("Trademarks") in connection with billing and collection of Cardholder accounts.

---

[3] The Program Agreement is confidential by its terms and contains confidential commercial information and trade secrets that are protected from disclosure pursuant to 11 U.S.C. § 107(b). Accordingly, copies of the Program Agreement are not being filed herewith and it is only discussed generally herein. By discussing the Program Agreement generally in this Limited Objection, Comenity does not waive any of the confidentiality provisions of the Program Agreement and reserves all rights with respect thereto.

6.      In connection with its approval of the Debtors' motion to continue and maintain certain customer programs, the Court previously granted the Debtors authority to continue the private label credit card program under the Program Agreement.  *See* Docket No. 90.

## The Sale to Buyer

7.      On the Petition Date, the Debtors filed the Bidding Procedures Motion [Docket No. 15], seeking Court authority to sell substantially all of the Debtors' assets either at auction or pursuant to an asset purchase agreement (the "APA") between the Debtors and SPARC Group LLC (the "Buyer").

8.      The APA contemplates that certain "Transferred Contracts" will be assumed and assigned to the Buyer, effective as of the Closing Date of the Sale, *see* APA § 2.7(b), and that the Buyer may designate certain Designation Contracts that it may direct the Debtors to assume and assign post-closing, *see* APA, §  2.7(c).

9.      On July 24, 2020, the Debtors filed the Cure Notice, listing the Program Agreement as "PL [Private Label] Credit Card Program Agreement Dated 11/28/2017" for potential assumption and assignment.  The Cure Notice listed no cure amount.

10.     On July 28, 2020, the Debtors filed the proposed Sale Order (the "Sale Order") [Docket No. 233-1].

11.     On July 30, 2020, the Court entered the Bidding Procedures Order [Docket No. 251].

## LIMITED OBJECTION

### A.      The Program Agreement Must Be Assumed and Assigned, or Rejected, Effective as of the Closing Date.

12.     Due to the nature of the Program Agreement and the Debtors' obligations thereunder, the Program Agreement must be assumed and assigned (or rejected) contemporaneous

with the sale closing.  In a "Designation Rights Period" scenario, Comenity would be significantly prejudiced due to the Debtors' inability to perform under the Agreement, coupled with the lack of privity with the Buyer that will own and operate the business to which the Program Agreement relates.

13.    After the Closing Date, the Debtors will effectively be shell entities.  They will lack the information, resources and ability to perform material obligations under the Program Agreement.  For example, the Program Agreement requires the parties (i) to cooperate, via an Operating Committee, to promote the program and make it available to qualified customers who wish to open accounts; (ii) to maintain a Loyalty Program for the benefit of Cardholders; and (iii) to comply with established Operating Procedures.  Once the sale closes, the Debtors will no longer have any ability to control the operation of the business or abide by these terms. Furthermore, due to a lack of contractual privity with the Buyer (*i.e.*, the entity operating the business and engaging in sales transactions with Comenity Cardholders to which the Program Agreement relates), Comenity would be unable to enforce material terms of the Program Agreement during any Designation Rights period, including its rights of recoupment and setoff with respect to daily Cardholder sales transactions.

14.    In addition to the prejudicial impact upon Comenity's rights, permitting the Program Agreement to remain in "limbo" during a Designation Rights Period would be detrimental to the Cardholders.  For example, as noted above, the Debtors would have no ability to maintain the required Loyalty Program and the Buyer would have no contractual obligation to do so in its operation of the business.  Additionally, the Program Agreement requires the Debtors to provide information relating to disputed charges reported by Cardholders or potentially fraudulent charges posted to a Cardholders account.  In a "Designation Rights" scenario, the Debtors would not have

access to the necessary information, and, due to lack of privity, Comenity would be without recourse against the Buyer to enforce its contractual rights.  Furthermore, Comenity operates in a highly regulated space, and must make legally binding representations to regulatory bodies and to consumers regarding, among other things, Comenity's ability to honor any guarantees made to Cardholders with respect to their transactions.

15.     It would be grounds for termination of the Program Agreement, and create a host of additional legal and regulatory issues, were Comenity no longer in privity with the entity in possession of the assets that form the basis for the Program Agreement, and was instead left counterparty to an empty shell.  Accordingly, Comenity objects to the Sale Order and Sale Transaction to extent the Debtors seek to assume and assign or reject the Program Agreement after the Sale Transaction closes or to make the Program Agreement a "Designated Contract."  In conjunction with this objection, Comenity requests that the Sale Order be modified to reflect that: (a) the Program Agreement must be assumed and assigned or rejected upon the closing of the Sale Transaction; and (b) in the event that the Debtors choose to reject the Program Agreement, immediately following the closing of the Sale Transaction the Debtors must cease to accept the Lucky Brand Cards in-store or online for any and all purposes including the purchase or return of merchandise.

**B.      Comenity's Rights and License to the Trademarks Should Not be Impaired.**

16.     Comenity further objects to the Sale Order to the extent that it seeks to sell the Debtors' intellectual property and trademarks free and clear of Comenity's rights and license to the Trademarks.

17.     The Sale Order provides that the Debtors may sell to the Stalking Horse Bidder the "Acquired Assets," defined in section 1.1 of the APA to include the Debtors' intellectual property, free and clear of all liens, rights, liabilities, encumbrances and other interests of any kind or nature

whatsoever including contractual commitments and licenses under, *inter alia*, section 365(n) of the Bankruptcy Code. *See* Sale Order ¶¶ R, 14, 18, 20.

18.     Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court . . . shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).  Section 361 of the Bankruptcy Code provides the bankruptcy court with broad discretion in granting adequate protection. *See* 11 U.S.C. § 361.

19.     The Program Agreement grants Comenity a license to use Lucky Brand's Trademarks in connection with the private label credit card program.  The Sale Order makes no provision for adequate protection to be provided to Comenity as is required in order for the Trademarks to be sold free and clear of Comenity's rights and license.  Accordingly, Comenity objects to the sale of the Trademarks free and clear of Comenity's license without adequate protection of Comenity's interests.  The Sale Order should clarify that the Trademarks may not be sold free and clear of Comenity's interests unless adequate protection is provided to Comenity.  Comenity also requests that this Court adequately protect Comenity by requiring that the Trademarks remain subject to Comenity's interests. *See, e.g.*, *In re Dynamic Tooling Sys., Inc.*, 349 B.R. 847, 856 (Bankr. D. Kan. 2006).

20.     Additionally, the U.S. Supreme Court recently held that a debtor's rejection of a licensing agreement does not deprive the licensee of its rights under the agreement. *Mission Prod. Holdings, Inc. v. Tempnology, LLC, n/k/a Old Cold LLC*, 139 S. Ct. 1652 (2019).  Because the Debtors cannot impair Comenity's license to the Trademarks through rejection of the Program Agreement, the Debtors also should not be able to impair Comenity's license to the Trademarks

through a free and clear section 363 sale based on the same reasoning set forth by the U.S. Supreme Court in *Tempnology*.

21.    Further, it would be inequitable for Comenity to have been required to finance Lucky Brand's sales through the Lucky Brand Cards during the pendency of this bankruptcy case but not allowed to use the Trademarks to the full extent allowed by the Program Agreement in order to collect the amounts owed to Comenity by the Cardholders for such financing after the closing of the sale.

22.    Finally, consumer protection laws require issuers of credit and collectors of debt to identify the consumers the origin of their debts. *See, e.g.*, 15 U.S.C. § 1692g. Use of the Trademarks is required for that purpose.

23.    Accordingly, the Sale Order should clarify that Comenity's license to use the Trademarks is not affected in any way by the Sale Order (or any order rejecting the Program Agreement). Comenity requests modification of the Sale Order providing that Comenity's right to use the Debtors' trademarks, service marks, and/or other rights pertaining to the Debtors' names as set forth in the Program Agreement shall not be affected, modified, waived, primed, subordinated, or impaired in any way by any sale of the Debtors' assets, including, but not limited to, the Debtors' intellectual property, and any such sale shall not be made free and clear of Comenity's interest in the assets pursuant to the Program Agreement, specifically permitting: (a) Comenity to use the Debtors' Trademarks through the later of (i) May 1, 2021 or (ii) nine (9) months after the last date on which Comenity is required to operate under the existing Program Agreement solely as necessary to administer the private label open-ended credit card accounts and collect the balances due on any accounts pursuant to the Program Agreement; and (b) Comenity, or its successor in interest, to continue the use of the Debtors' un-stylized name in order to process,

service, and collect any remaining balances on the private label open-ended credit card accounts until such time as the accounts are fully processed, collected, and closed.

**C.     The Debtors Must Cure Any Obligations that Become Due and Payable Before the Effective Date of any Prospective Assumption and Assignment.**

24.     To the extent that any chargebacks or other obligations become due and payable to Comenity or accrue before the effective date of any prospective assumption and assignment, those obligations must be satisfied as a condition to assumption and assignment and Comenity reserves its rights with respect to any such amounts.

## RESERVATION OF RIGHTS

25.     Comenity reserves all rights to raise additional objections to any orders related to the Cure Notice, Sale Transaction, Sale Order, any related matters, and any amendments or revisions thereto.  Comenity further reserves all rights it has under the Program Agreement, the orders related to the Cure Notice, Sale Transaction, Sale Order, the Final DIP Order, the order on the Customer Programs Motion, and applicable law, including, but not limited to, its rights to seek adequate protection and/or relief from the automatic stay.

## CONCLUSION

**WHEREFORE,** Comenity respectfully requests that this Court enter an Order:

a.   Sustaining this Limited Objection;

b.   Modifying the Sale Order or any order assuming and assigning or rejecting the Program Agreement to provide that:

    i.   The Program Agreement must be assumed and assigned or rejected no later than the Closing Date;

    ii.   In the event of an assumption and assignment, the Debtors are liable for any cure amounts incurred prior to the date of assumption and assignment

iii.   In the event that the Program Agreement is excluded from the Sale:

1. immediately following the closing of the Sale Transaction the Buyers shall not accept the Lucky Brand Cards in-store or online for any and all purposes including the purchase or return of merchandise;

2. Comenity's right to use the Debtors' trademarks, service marks, and/or other rights pertaining to the Debtors' names as set forth in the Program Agreement shall not be affected, modified, waived, primed, subordinated, or impaired in any way by any sale of the Debtors' assets, including, but not limited to, the Debtors' intellectual property, and any such sale shall not be made free and clear of Comenity's interest in the assets pursuant to the Program Agreement.

iv.   All of Comenity's rights, remedies, claims, defenses, and other relief arising from or related to the Program Agreement (including, but not limited to, those set forth above) are expressly preserved and reserved;

c. Granting such other, further, and different relief as this Court deems just and proper.

Dated:  August 7, 2020                    BURR & FORMAN LLP

/s/ J. Cory Falgowski
J. Cory Falgowski
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
Telephone:  302-830-2312
Facsimile:  302-397-2566
Email:  jfalgowski@burr.com

*Counsel to Comenity Capital Bank*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of August 2020, I caused a true and correct copy

of the foregoing to be served by electronic delivery to the parties registered to received notices

through the CM/ECF system and by electronic mail to the following:

Ted A. Dillman
Christina Craige
Brian S. Rosen
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Email:  ted.dillman@lw.com
        chris.craige@lw.com
        brian.rosen@lw.com
(*Counsel to the Debtors*)

Kara Hammond Coyle
Joseph M. Mulvihill
Young Conaway Stargatt & Taylor, LLP
1000 N. King Street
Wilmington, Delaware 19801
Email:  kcoyle@ycst.com
        jmulvihill@ycst.com
(*Counsel to the Debtors*)

Kelley A. Cornish
Edward T. Ackerman
Brian Bolin
Jeffrey L. Stricker
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Email:  kcornish@paulweiss.com
        eackerman@paulweiss.com
        bbolin@paulweiss.com
        jstricker@paulweiss.com
(*Counsel to SPARC Group LLC and
ABG-Lucky, LLC*)

Jeffrey Wolfe
Greenberg Traurig, LLP
One International Place, Suite 200
Boston, MA 02110
Email:  wolfeje@gtlaw.com
(*Counsel to Wells Fargo Bank, N.A.*)

Juliet M. Sarkessian
Office of The United States Trustee
844 King Street
Suite 2207
Lockbox 35
Wilmington, DE 19801
Email:  juliet.m.sarkessian@usdoj.gov
(*U.S. Trustee*)

Thomas Califano
Daniel M. Simon
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Email:  thomas.califano@dlapiper.com
        daniel.simon@dlapiper.com
(*Counsel to Second Lien Lenders*)

Kevin J. Simard
Jennifer Conway Fenn
Choate Hall & Stewart LLP
Two International Place
Boston, MA 02110
Email:  ksimard@choate.com
        jfenn@choate.com
(*Counsel to Wells Fargo Bank, N.A.*)

Holly Snow
Paul Hastings LLP
71 S. Wacker Drive, 45th Floor
Chicago, IL 60606
Email:  hollysnow@paulhastings.com
(*Counsel to Hilco Merchant Resources, LLC*)

43934185 v3

11

Mark D. Collins
Richards, Layton & Finger, PA
920 N King Street
Wilmington, DE 19801
Email:  collins@rlf.com
(*Counsel to Clover Holdings, II, LLC*)


Bradford J. Sandler
Jeffrey N. Pomerantz
Colin R. Robinson
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, DE  19801
Email:  bsandler@pszjlaw.com
        jpomerantz@pszjlaw.com
        crobinson@pszjlaw.com
(*Counsel to the Official Committee of Unsecured Creditors*)

David A. Wender
Antone J. Little
Alston & Bird LLP
1201 West Peachtree Street, Suite 4900,
Atlanta, GA 30309-3424
Email:  david.wender@alston.com
        antone.little@alston.com
(*Counsel to Wilmington Trust, N.A.*)
Christopher M. Samis
L. Katherine Good
R. Stephen McNeill
Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801-3700
Email: csamis@potteranderson.com
        kgood@potteranderson.com
        rmcneill@potteranderson.com
(*Counsel to SPARC Group LLC*)


/s/  *J. Cory Falgowski*
J. Cory Falgowski (No. 4546)