**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Lucky Brand Dungarees, LLC *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 20-11768 (CSS)<br><br>Jointly Administered<br><br>**Hearing Date:  8/12/20 @ 10:00 a.m.**<br>**Objections Due:  8/7/20 @ 4:00 p.m.**<br><br>**Re:  D.I. 15, 180** |

**REM OPTICAL COMPANY'S (I) LIMITED OBJECTION TO ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACT, AND (II) RESERVATION
OF RIGHTS AND CONDITIONAL REQUEST FOR ADEQUATE PROTECTION,
WITH RESPECT TO DEBTORS' SALE MOTION AND NOTICE OF CURE AMOUNTS**

Trademark licensee and executory contract counterparty Rem Optical Company, Inc. ("Rem"), hereby files this limited objection and reservation of rights concerning the Debtors' sale process generally and their efforts to seek permission to assume and assign the License Agreement (defined below).

### BACKGROUND

1.  Debtor Lucky Brand Dungarees, LLC ("Licensor") and Rem are party to that certain License Agreement dated as of June 4, 2007 (as amended to the date hereof, the "License Agreement").[1]  The License Agreement is an integrated executory contract providing for, among other things, the grant of various intellectual property rights from

---

[1] The License Agreement itself purports to be confidential.  Rem will consult with the Debtors and their counsel concerning whether and how the document may be filed with the Court should its precise terms become relevant.

Licensor to Rem (the "Licensed Rights"), as well as trade, marketing and numerous other economic and non-economic obligations between the parties.

2.      The Debtors have stated they intend to sell and transfer the License Agreement as part of their ongoing sale process, and they have provided Rem with a monetary cure amount, but no other assurances of the ability of SPARC, the IP Buyer, or any other buyer to provide future performance under the License Agreement.

3.      Licensor and Rem have been negotiating a possible amendment to the License Agreement to address the terms on which Rem might consent to the assumption and assignment of the License Agreement, but to date not agreement has been reached.

## OBJECTIONS

4.      In the absence of a finalized agreement concerning the terms on which it would consent to the assumption and assignment of the License Agreement, Rem files this Objection out of an abundance of caution to address the following issues.

<u>No Adequate Assurances of Future Performance</u>.

5.      Neither the Debtors nor SPARC have provided any assurances, let alone adequate assurances, that SPARC or any other prospective purchaser can provide future performance of the non-economic obligations of Licensor under the License Agreement. As the licensor under the License Agreement, any purchaser would be under an obligation to maintain and protect not just the general legal existence of the marks involved, but also the intrinsic and unique identity associated with the marks and other intellectual property licensed thereunder, from which their value arises.  While SPARC has experience with managing apparel brands, the License Agreement refers in numerous places to maintaining the particular "philosophy" of the Lucky marks, and further acknowledges that the identity of the owners of a company can reflect upon and

affect the standards, reputation, image, prestige and goodwill that are inherent in a mark. It cannot be presumed that these "soft" performance obligations could be performed by just any purchaser, however experienced it might be in managing apparel brands. (Indeed, SPARC's broad experience with a number of marks and brands could in fact work against it here, to the extent that could cause dilution or crossover among or between the various brands it and its affiliates manage.)

6. Accordingly, unless and until Rem receives adequate assurance of a purchaser's ability to satisfy the non-economic performance obligations under the Licensing Agreement that are unique to the marks and other intellectual property thereunder, or until Rem grants its consent, the Licensing Agreement may not be assumed and assigned. *See* 11 U.S.C. § 365(b)(1)(C). In any event, Rem does not consent to any amendment of nor grant any waivers concerning performance of these non-economic obligations under the License Agreement, and reserves and preserves all rights to demand full performance thereof from any assignee of the License Agreement.

Cure Amounts.

7. Docket No. 180 lists the proposed cure amount for the License Agreement at $5,108. Rem does not dispute that this is the approximate amount of the presently liquidated amount outstanding under the License Agreement, arising from sales of licensed products to Licensor under the License Agreement. Rem does object to any characterization that payment of this amount would cure any outstanding non-monetary, performance-related defaults or obligations under the License Agreement that may have accrued in part prior to assumption and assignment, such as the duty to defend the licensed rights from infringement that commenced prior to that time.

8. The sale order must clarify that the purchaser will assume any non-economic and other performance type obligations thereunder, regardless of when such obligations accrue. *See*, *e.g.*, *In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) (contract must be assumed in its entirety).

<u>Adequate Protection of License Rights</u>.

9. As a licensee of intellectual property rights, including trademarks, Rem is entitled to and possessed of certain statutory and other rights in the event the License Agreement is rejected rather than assumed and assigned. *See* 11 U.S.C. § 365(n); *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1661 (2019) ("Rejection of a contract—any contract—in bankruptcy operates not as a rescission but as a breach." (rejection under 11 USC § 365 of trademark license by licensor did not terminate license rights previously granted to non-debtor licensee)). This is particularly true given that the License Agreement grants Rem certain exclusive license rights, which in this context are typically considered more property-like in nature than merely personal.

10. Accordingly, any sale of the underlying trademarks and other intellection property licensed to Rem under the License Agreement, separate from the License Agreement, must be conditioned on providing adequate protection of the rights granted to Rem under the License Agreement. *See* 11 U.S.C. § 363(e) ("on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest").

**CONCLUSION**

11.  Rem reserves all rights to raise further objections as this case develops, for example, if the stalking horse is not the eventual purchaser, if any eventual amendment to the License Agreement is challenged or not assented to by a competing purchaser, if the purchased assets do not include the Licensed Rights, if an assignee of the License Agreement fails to fulfil the non-monetary obligations under the License Agreement, or if the License Agreement itself is ultimately rejected rather than assumed or assigned.

Dated:  August 7, 2020

        MACAULEY LLC

        _/s/ Thomas G. Macauley_
        Thomas G. Macauley (No. 3411)
        300 Delaware Ave., Suite 1018
        Wilmington, DE  19801
        (302) 656-0100

        -and-

        BIRCH HORTON BITTNER & CHEROT
        Austin K. Barron
        510 L St., Suite 700
        Anchorage, AK  99501
        (907) 263-7245
        abarron@bhb.com

        Attorneys for Rem Optical Company, Inc.