**Exhibit D**

**Liquidation Analysis**

# LIQUIDATION ANALYSIS

## General Assumptions

Hypothetical Chapter 7 recoveries set forth in this analysis (this "**Liquidation Analysis**") were determined through multiple steps, as set forth below. The basis of the Liquidation Analysis is the Debtors' cash balance and assets as of November 14, 2020 (the "**Conversion Date**") and the net costs to execute the administration of the wind down of the Estates. The Liquidation Analysis assumes that the Debtors would commence a Chapter 7 liquidation on or about the Conversion Date under the supervision of a court-appointed Chapter 7 Trustee. The Liquidation Analysis reflects the wind down and liquidation of substantially all of the Debtors' remaining assets and the distribution of available proceeds to the claim holders during the period after the Conversion Date.

THE DEBTORS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS OR A CHAPTER 7 TRUSTEE. NEITHER THE ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WOULD NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

**Summary Notes to Liquidation Analysis**

1. *Dependence on assumptions*. The Liquidation Analysis depends on a number of estimates and assumptions. Although developed and considered reasonable by the management and the advisors of the Debtors, the assumptions are inherently subject to uncertainties and contingencies beyond the control of the Debtors or their management. The Liquidation Analysis is also based on the Debtors' best judgment of how numerous decisions in the liquidation process would be resolved. Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation and actual results would vary materially and adversely from those contained herein.

2. *Dependence on forecasted financials*. This Liquidation Analysis contains numerous estimates that are still under review and it remains subject to further legal and accounting analysis.

3. *Chapter 7 liquidation process*. This liquidation of the Debtors' assets is assumed to be completed over a six-month period. During this time, the Chapter 7 Trustee would hold a 341 creditors meeting, investigate the Debtors' assets, and would also be working on administrative activities, such as final creditor distributions needed to complete the wind down of the Estates.

4. *Claim Estimates*. In preparing this Liquidation Analysis, the Debtors have preliminarily estimated an amount of claims based upon a review of the Debtors' estimated balance sheet and claims filed to date. The Second Lien Term Debt is estimated to include principal and post-petition PIK interest accrual, as adjusted for a reduction in the principal balance effected by a $40M credit bid on August 15, 2020 and an additional paydown of $5M on August 27, 2020. Other Secured Claims are estimated based on claims submitted as of September 21, 2020 and are subject to the claims allowance process and potential objection. Additional claims were estimated to include certain Chapter 7 administrative obligations incurred after the Conversion Date. The estimate of the amount of claims set forth in this Liquidation Analysis should not be relied upon for any other purpose, including, without limitation, any determination of the value of any distribution to be made on account of claims under the Plan. The actual amount of claims could be materially different from the amount of claims estimated in the Liquidation Analysis.

## General Assumptions

**Gross Liquidation Proceeds**

A. **Cash in Debtors' Operating Account**

The cash held in the Debtors' operating account is estimated based on a reduction of amounts currently held by amounts payable under the Wind Down Budget prior to the Conversion Date. The Liquidation Analysis assumes 100% recovery of cash held in the Debtors' operating account at the Conversion Date.

B. **Segregated Cash**

Segregated cash consists of amounts segregated pursuant to the Sale Order in respect of (i) claims held by local Texas taxing authorities, (ii) 503(b)(9) claims, (iii) stub-rent, and (iv) the Debtors' adequate assurance utility deposit. The Liquidating Analysis assumes 100% recovery of the segregated cash at the Conversion Date.

C. **Professional Fee Escrow Held Young Conaway Stargatt & Taylor, LLP**

The Professional Fee Escrow Held by YCST represents cash already escrowed and held by Young Conaway Stargatt & Taylor in connection with the closing of the Sale Transaction, as reduced by the amount of fees estimated to be paid from such account as of the Conversion Date for Professional Fees previously allowed by the Court pursuant to the monthly fee application process and any other final fee application approved by the Conversion Date. Both the actual amount of cash held in the Professional Fee Escrow, as well as remaining Professional Fee Claims to be paid will depend upon the cadence of the fee allowance and payment process prior to any Conversion Date.

**Liquidation Expenses**

A.   **Chapter 7 Trustee Fees**

Pursuant to section 326 of the Bankruptcy Code, the Court may allow reasonable compensation for the trustee's services, not to exceed 25% on the first $5,000 or less, 10% on any amount in excess of $5,000 but not in excess of $50,000, 5% on any amount in excess of $50,000 but not in excess of $1 million, and reasonable compensation not to exceed 3% of such distributions in excess of $1 million. For the purpose of this analysis, the estimate for the Trustee's fees have been simplified to 3% of net liquidation proceeds.

B.   **Chapter 7 Professional Fees**

Chapter 7 Professional Fees represent the estimated professional fees to support the wind down of the Estates. The Chapter 7 Professional Fees are estimated amounts including but not limited to, holding a 341 hearing, filing a minimum amount of paperwork and performing a minimal investigation of assets.

**Hypothetical Claims Recovery**

A.   **Chapter 11 Professional Fees**

Regardless of the cadence of the fee allowance and payment process for Professional Fee Claims prior to any Conversion Date, Professional Fee Claims are limited by, and estimated to be lower than, the amount held in the Professional Fee Escrow Account. The Liquidation Analysis assumes therefore that unpaid professional fees for the advisors to the Debtors and Unsecured Creditors Committee will be paid in full from the Professional Fee Escrow Account held outside the Estates by Young Conaway Stargatt & Taylor, LLP.

B.   **Texas Taxing Authority Secured Lien**

The Liquidation Analysis assumes that claims asserted by the local Texas taxing authority will be paid in full as liens prior to the Second Lien Term Debt.

C.   **Other Secured Claims**

The Liquidation Analysis estimates the amount of Other Secured Claims based on the claims filed as of September 21, 2020 and is subject to the claims allowance process and potential objection. The Liquidation Analysis assumes that Other Secured Claims will also be paid in full.

D.   **Second Lien Term Debt**

The Second Lien Term Debt is estimated to include principal and post-petition PIK interest accrual, as adjusted for a reduction in the principal balance effected through the credit bit in the amount of $40 million on August 15, 2020, in connection with the Sale Transaction. In addition, the estimate takes into account the $5 million pay down made on August 27,

2020, in connection with the Sale Transaction. The Liquidation Analysis estimates a recovery of less than 100% of the Second Lien Term Debt.

### E. Chapter 11 Administrative Claims

Because the Second Lien Term Debt is secured by a lien on all assets of the Debtors and is not being paid in full, the Liquidation Analysis assumes that Chapter 11 Administrative Claims, including 503(b)(9) claims, claims on account of stub-rent and other administrative claims, will not be paid and there will be no recovery on account of such claims.

### F. Priority Tax Claims

Because the Second Lien Term Debt is secured by a lien on all assets of the Debtors and is not being paid in full, and because Chapter 11 Administrative Claims are not being paid in full, the Liquidation Analysis assumes that Priority Tax Claims will not be paid and there will be no recovery on account of such claims.

### G. General Unsecured Claims

General unsecured claims include prepetition amounts for merchandise vendors, non-merchandise vendors, accrued rent claims and other unsecured claims as of the Conversion Date. Because the Second Lien Term Debt is secured by a lien on all assets of the Debtors and is not being paid in full and because Chapter 11 Administrative Claims and Priority Tax Claims are not being paid in full, the Liquidation Analysis estimates a $0 recovery on the General Unsecured Claims.

**Lucky Brand Dungarees**
**Best Interest Analysis: Chapter 7 Result**
**$ in Thousands**

| | Book Value as of 11/14 | Chapter 7 Result |
|---|---:|---:|
| **I. Net Proceeds** | | |
| Estate Operating Cash | 11,300 | 11,300 |
| Segregated Cash | 5,447 | 5,447 |
| Professional Fee Escrow Held by YCST | 3,346 | 3,346 |
| **Estimated Net Proceeds Available for Distribution** | **20,093** | **20,093** |
| | | |
| **Chapter 7 Claims:** | | |
| | | |
| **II. Chapter 7 Case / Other Administration Fees** | | |
| Est. Chapter 7 Liquidating Trustee Fees | 603 | 603 |
| Est. Trustee's Counsel | 200 | 200 |
| **Estimated Chapter 7 Case / Other Administration Fees** | **803** | **803** |
| | | |
| **Estimated Net Proceeds Available After Chapter 7 / Other Admin Fees** | | **19,290** |
| | | |
| **III. Secured Claims** | | |
| Other Secured Claims | 897 | 897 |
| Texas Taxing Authority Secured Lien | 89 | 89 |
| 2nd Lien Term Debt | 29,034 | 15,708 |
| **Estimated Total Secured Claims** | **30,019** | **16,694** |
| | | |
| **Estimated Net Proceeds Available After Secured Claims** | | **2,596** |
| | | |
| **IV. Chapter 11 Fees & Other Priority Claims** | | |
| Est. Unpaid Chapter 11 Professional Fees | 2,596 | 2,596 |
| Est. 503(b)(9) Claims | 1,292 | - |
| Est. Stub Rent | 3,779 | - |
| Est. Other Administrative Claims | 4,000 | - |
| Est. Priority Tax Claims | 2,000 | - |
| **Estimated Chapter 11 Fees & Other Priority Claims** | **13,668** | **2,596** |
| | | |
| **Estimated Net Proceeds Available to Unsecured Creditors** | | **-** |

| 2nd Lien Term Debt | $ |
|---|---:|
| Principal and PIK at Filing | 71,390 |
| Additional PIK Accrual through 11/14 | 2,644 |
| 2nd Lien Credit Bid | (40,000) |
| Additional 2nd Lien Paydown | (5,000) |
| **2nd Lien Term Debt Claim** | **29,034** |