## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------- x
                                                       :
In re:                                     :           Chapter 11
                                                       :
Lucky Brand Dungarees, LLC, et al.,¹       :           Case No. 20-11768 (CSS)
                                                       :
                         Debtors.          :           (Jointly Administered)
                                                       :
----------------------------------------------------- x    Re Dkt. Nos. 540, 499
```

## FINDINGS OF FACT, CONCLUSIONS OF LAW,
## AND ORDER CONFIRMING SECOND AMENDED JOINT
## PLAN OF LIQUIDATION FOR LUCKY BRAND DUNGAREES, LLC
## AND ITS AFFILIATE DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")

having:

a.  commenced with this Court, on July 3, 2020 (the "**Petition Date**"), voluntary cases (the "**Chapter 11 Cases**") for relief under chapter 11 of the Bankruptcy Code;

b.  continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  filed, on August 28, 2020, the *Joint Plan of Liquidation for Lucky Brand Dungarees, LLC and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 386] and the *Disclosure Statement for Joint Plan of Liquidation for Lucky Brand Dungarees, LLC and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 387];

d.  filed, on October 1, 2020, the *First Amended Joint Plan of Liquidation for Lucky Brand Dungarees, LLC and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 451];

e.  filed, on October 1, 2020, the *Disclosure Statement for First Amended Joint Plan of Liquidation for Lucky Brand Dungarees, LLC and Its Affiliate Debtors Under*

---

¹ The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Lucky Brand Dungarees, LLC (3823), LBD Parent Holdings, LLC (4563), Lucky Brand Dungarees Stores, LLC (7295), Lucky PR, LLC (9578), and LBD Intermediate Holdings, LLC (7702). The Debtors' address is 540 S Santa Fe Avenue, Los Angeles, California 90013.

*Chapter 11 of the Bankruptcy Code* [Docket No. 452] (including all exhibits and supplements thereto, and as modified or amended from time to time, the "**Disclosure Statement**");

f.  obtained, on October 2, 2020, entry of the *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to the Debtors' Joint Chapter 11 Plan, (III) Approving the Forms of Ballot and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 457] (the "**Disclosure Statement Order**"), by which the Bankruptcy Court, among other things, approved the Disclosure Statement, established procedures for the solicitation and tabulation of votes to accept or reject the Plan, scheduled a hearing on confirmation of the Plan, and approved related notice procedures;

g.  caused, on October 7, 2020, Epiq Corporate Restructuring, LLC ("**Epiq**"), the Debtors' Balloting Agent, to commence solicitation of votes to accept or reject the Plan and deliver the Notice of Non-Voting Status and the Opt-In Release Forms or Opt-Out Release Forms (as defined in the Disclosure Statement Order), as applicable, as evidenced by, among other things, the *Affidavit of Service of Solicitation Materials* [Docket No. 507] (the "**Affidavit of Service**") filed by Epiq on October 21, 2020;

h.  caused notice of the Confirmation Hearing (the "**Confirmation Hearing Notice**") to be published in the national edition of *The Wall Street Journal* on October 7, 2020, as evidenced by, among other things, the *Affidavit of Publication* [Docket No. 467] (the "**Affidavit of Publication**") filed by Epiq on October 7, 2020;

i.  filed, on October 19, 2020, the *Plan Supplement for the First Amended Joint Plan of Liquidation for Lucky Brand Dungarees, LLC and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 499] including all exhibits and supplements thereto, and as modified or amended from time to time, the "**Plan Supplement**");

j.  caused, on November 4, 2020, Epiq to file the *Declaration of Stephenie Kjontvedt of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on First Amended Joint Plan Of Liquidation for Lucky Brand Dungarees, LLC and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 532] (the "**Voting Report**");

k.  filed, on November 11, 2020, the *Debtors' Memorandum of Law in Support of Confirmation of the Second Amended Joint Plan of Liquidation for Lucky Brand Dungarees, LLC and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 541] (the "**Confirmation Brief**");

l.  filed, on November 11, 2020, the *Declaration of Mark A. Renzi in Support of Entry of an Order Confirming Second Amended Joint Plan of Liquidation for*

*Lucky Brand Dungarees, LLC and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 542] (the "**Confirmation Declaration**"); and

m.    filed, on November 11, 2020, the *Second Amended Joint Plan of Liquidation for Lucky Brand Dungarees, LLC and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 540] (including all exhibits and supplements thereto, and as modified or amended from time to time, the "**Plan**").[2]

This Court having:

i.    set November 17, 2020, at 11:00 a.m. (prevailing Eastern Time) as the date and time of the hearing pursuant to section 1129 of the Bankruptcy Code, to consider confirmation of the Plan (the "**Confirmation Hearing**");

ii.    reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Disclosure Statement Order, the Voting Report, the Affidavit of Service, the Affidavit of Publication, the Confirmation Brief, the Confirmation Declaration, and the other papers before the Bankruptcy Court in connection with confirmation of the Plan;

iii.    held the Confirmation Hearing and heard the statements of counsel in support of and any in opposition to confirmation at the Confirmation Hearing, as reflected in the record at the Confirmation Hearing;

iv.    considered all testimony presented and evidence admitted at the Confirmation Hearing, as applicable;

v.    taken judicial notice of the papers and pleadings on file in these Chapter 11 Cases; and

vi.    finding that (i) notice of the Confirmation Hearing and the opportunity of any party in interest to object to Confirmation was adequate and appropriate, in accordance with Bankruptcy Rule 2002(b) and the Disclosure Statement Order, as to all parties to be affected by the Plan and the transactions contemplated thereby and (ii) the legal and factual bases set forth in the applicable papers and at the Confirmation Hearing, and as set forth in this Confirmation Order, establish just

---

[2]    Unless otherwise specified, capitalized terms and phrases used herein have the meanings assigned to them in the Plan.  The rules of interpretation set forth in Section I.A of the Plan shall apply to these *Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Joint Plan of Liquidation for Lucky Brand Dungarees, LLC and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* (this "**Confirmation Order**").  In addition, in accordance with Section I.A of the Plan, any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules (each as hereinafter defined), shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  A copy of the Plan is attached hereto as **Exhibit A** and incorporated herein by reference.

cause for the relief granted herein; the Bankruptcy Court hereby makes the following findings of fact and conclusions of law, and issues the following order:[3]

# I.    FINDINGS OF FACT.

## A.    JURISDICTION, CORE PROCEEDING, APPLICABLE LAW.

1.    The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Bankruptcy Court may enter a Final Order consistent with Article III of the United States Constitution.  The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code.

## B.    VENUE.

2.    Venue in the District of Delaware of the Chapter 11 Cases was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## C.    COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE.

### 1.    Section 1129(a)(1) - Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.

3.    The Plan complies with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(l) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.

**a.    Sections 1122 and 1123(a)(1)-(4) - Classification and Treatment of Claims and Interests.**

4.    Pursuant to sections 1122(a) and 1123(a)(l) of the Bankruptcy Code, Article III of the Plan designates Classes of Claims and Interests, other than for Administrative Claims and

---

[3]    This Confirmation Order constitutes the Bankruptcy Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014.  Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

Priority Tax Claims.[4]  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  The Plan contains seven Classes of Claims and Interests, designated as Classes 1 through 7.  Such classification is proper under section 1122(a) of the Bankruptcy Code, because such Classes of Claims and Interests have differing rights among each other and against the Debtors' assets or differing interests in the Debtors.  Pursuant to section 1123(a)(2) of the Bankruptcy Code, Article III of the Plan specifies all Classes of Claims and Interests that are not Impaired under the Plan and specifies all Classes of Claims and Interests that are Impaired under the Plan.  Pursuant to section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan specifies the treatment of all Claims and Interests under the Plan.  Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan also provides the same treatment for each Claim or Interest within a particular Class, unless the Holder of a Claim or Interest agrees to less favorable treatment of its Claim or Interest.  The Plan therefore complies with sections 1122 and 1123(a)(1)-(4) of the Bankruptcy Code.

**b.      Section 1123(a)(5) - Adequate Means for Implementation of the Plan.**

5.      Article V and various other provisions of the Plan provide adequate means for the Plan's implementation.   Those provisions relate to, among other things: (i) the Plan Administration Process for winding down the Debtors' Estates and distributing estate proceeds as prescribed by the Plan; (ii) the Release Consideration and the potential creation of the Release Consideration Trust upon a determination by the Plan Administrator as prescribed by the Plan; and (iii) the ability, following confirmation and prior to the Effective Date, of the then-current

---

[4]   Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not required to be classified.  Articles II.A, II.B, and II.C of the Plan describe the treatment under the Plan of Administrative Claims, Priority Tax Claims, and Other Priority Claims, respectively.

officers, directors, and managers of each of the Debtors to execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan. The Plan therefore complies with section 1123(a)(5) of the Bankruptcy Code.

**c.      Section 1123(a)(6) - Prohibition Against the Issuance of Nonvoting Equity Securities and Adequate Provisions for Voting Power of Classes of Securities.**

6.      Section 1123(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases because the Plan contemplates (ii) the dissolution of the Debtors' corporate existences as soon as practicable after the Effective Date and (ii) no issuance of new securities.

**d.      Section 1123(a)(7) - Selection of Directors, Managers, and Officers in a Manner Consistent with the Interest of Creditors and Equity Security Holders and Public Policy.**

7.      After the Effective Date, pursuant to section 1124(b) of the Bankruptcy Code, the Plan Administrator shall be authorized to file each Debtor's tax returns. Following the Confirmation Date and prior to the occurrence of the Effective Date, the then-current officers, directors, and managers of each of the Debtors shall continue in their respective capacities in accordance with the applicable by-laws or other organizational documents, and the Debtors shall execute such documents and take such other action as is necessary to effectuate the actions provided for in the Plan. On and after the Effective Date, the Plan Administrator shall serve as the sole shareholder, interest holder, officer, director or manager of each of the Debtors, as applicable, under applicable state law. The Plan therefore complies with section 1123(a)(7) of the Bankruptcy Code, as appropriate for a liquidating plan, in a manner consistent with the interests of creditors and equity security holders and public policy.

e.    **Section 1123(b)(1)-(2) - Impairment of Claims and Interests and Assumption, Assumption and Assignment, or Rejection of Executory Contracts and Unexpired Leases.**

8.    In accordance with section 1123(b)(l) of the Bankruptcy Code, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Interests.  In accordance with section 1123(b)(2) of the Bankruptcy Code, Article VI of the Plan provides that, except as otherwise provided in the Plan, the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases as of the Effective Date that (i) have not been previously rejected, assumed, or assumed and assigned, including in connection with the Sale Transaction, and are not the subject of a pending motion or notice to reject, assume, or assume and assign as of the Effective Date, (ii) do not fall within the definition of the Chubb Insurance Program, (iii) are not identified on the Schedule of Assumed Contracts Filed with the Plan Supplement, and (iv) have not expired under their own terms prior to the Effective Date (collectively, the "**Remaining Contracts**").  Article V.J also provides for the assumption by the Debtors of the Chubb Insurance Program, subject to the terms of the Plan as to such assumption. The Plan is therefore consistent with section 1123(b)(1)-(2) of the Bankruptcy Code.

f.    **Section 1123(b)(3) - Retention, Enforcement and Settlement of Claims held by the Debtors.**

9.    Pursuant to section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in the Plan or this Confirmation Order, on and after the Effective Date, the Plan Administrator shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing, without the necessity of

obtaining consent or approval of any third party or providing further notice to, or obtaining the approval of, the Bankruptcy Court.

10.     The Plan Administrator or Release Consideration Trustee, as applicable, shall have the authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan.  From and after the Effective Date, the Plan Administrator or Release Consideration Trustee, as applicable, may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Plan Administrator or Release Consideration Trustee, as applicable, may also resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law, as necessary; *provided*, *however*, that for the avoidance of doubt, the underlying Claim shall remain under the jurisdiction of the Bankruptcy Court and shall not be Disallowed other than by order of the Bankruptcy Court.

11.     Any objections to Administrative Claims must be Filed and served on the Plan Administrator and the requesting party by the later of (a) one hundred and twenty (120) days after the Effective Date and (b) sixty (60) days after the Filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by Final Order of the Bankruptcy Court.  Except as otherwise set forth in the Plan, the Plan Administrator, the Release Consideration Trustee, and the Post-Effective Date Debtors shall File all objections to Disputed Claims or Interests, and shall File all motions to estimate Claims under section 502(c) of the Bankruptcy Code, on or before the Claims Objection Deadline; *provided*, *however*, that the Post-Effective Date Debtors may request that the Bankruptcy Court extend the Claims Objection Deadline, and the Plan Administrator, the Committee Trustee,  and Release Consideration Trustee, as applicable, may request that the Bankruptcy Court extend the Claims Objection Deadline with respect to Class 4 Claims, upon

notice to all affected Claim Holders.  Except for the claims objection deadlines set forth in the Plan, no other deadlines by which objections to Claims must be Filed have been established in these Chapter 11 Cases.  In light of the foregoing, the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

**g.      Section 1123(b)(4) – Sale of All or Substantially All of the Property of the Estate.**

12.     Consistent with section 1123(b)(4) of the Bankruptcy Code, the Plan effectuates the Distribution of the proceeds of the Sale Transaction under the Plan.  The Plan is therefore consistent with section 1123(b)(4) of the Bankruptcy Code.

**h.      Section 1123(b)(5) - Modification of the Rights of Holders of Claims.**

13.     Article III of the Plan modifies or leaves unaffected, as the case may be, the rights of Holders of each Class of Claims, and therefore, the Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.

**i.      Section 1123(b)(6) - Other Provisions Not Inconsistent with Applicable Provisions of the Bankruptcy Code.**

14.     The Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code, including but not limited to: (i) the provisions of Article V of the Plan regarding the means for executing and implementing the Plan; (ii) the provisions of Article VI of the Plan governing the treatment of Executory Contracts and Unexpired Leases; (iii) the provisions of Article VII of the Plan governing distributions on account of Allowed Claims, particularly as to the timing and calculation of amounts to be distributed; (iv) the provisions of Article X.E of the Plan regarding the permanent injunction with respect to claims released pursuant to the Plan; (v) the provisions of Articles X.B and X.C of the Plan regarding the Debtor Release and the Release by Holders of Claims and Interests; and (vi) the provisions of Article XI of the Plan regarding retention of jurisdiction by the Bankruptcy

Court over certain matters after the Effective Date. The Plan is therefore consistent with section 1123(b)(6) of the Bankruptcy Code.

### 2. Section 1129(a)(2) - Compliance with Applicable Provisions of the Bankruptcy Code.

15. The Debtors have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018. The Disclosure Statement and the procedures by which the ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and the Disclosure Statement Order. Consistent with Article IV.G of the Plan, the Debtors and their respective members, officers, directors, managers, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents, as applicable, have acted in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code. The Plan therefore complies with section 1129(a)(2) of the Bankruptcy Code.

### 3. Section 1129(a)(3) - Proposal of the Plan in Good Faith.

16. The Debtors proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan. Based on the Disclosure Statement, the Confirmation Declaration, and the evidence presented at the Confirmation Hearing, as applicable, the Bankruptcy Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of liquidating the Debtors' Estates and maximizing the returns available to creditors of the Debtors. Moreover, the Plan itself and the arms' length negotiations among the Debtors, the Committee, the First Lien Lenders, the Second

Lien Lenders, and the Debtors' other constituencies leading to the Plan's formulation, as well as the unanimous support of voting creditors for the Plan, provide independent evidence of the Debtors' good faith in proposing the Plan.

> **4.      Section 1129(a)(4) - Bankruptcy Court Approval of Certain Payments as Reasonable.**

17.      Article II.A.2 of the Plan provides that all Entities seeking an award by the Bankruptcy Court of Professional Fee Claims (a) shall File their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date, to the extent a final application for such fees and expenses has not been Filed and Allowed, and (b) parties in interest shall have at least twenty-one (21) days after the filing of each final fee application to object to the same.  To the extent not already paid, all Entities seeking an award by the Bankruptcy Court of Professional Fee Claims shall be paid in full from the Professional Fee Escrow Account in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of the Effective Date and the date upon which the order authorizing payment of the final fee application of any professional is entered or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Plan Administrator; *provided*, *however*, that no such fees or expenses shall be paid absent order of the Bankruptcy Court allowing the same.  The Plan Administrator is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.  Notwithstanding anything to the contrary in the Plan, Holders of Professional Fee Claims shall be paid solely from, and to the extent of amounts funded to, the Professional Fee Escrow Account (including amounts funded into the Professional Fee Escrow Account pursuant to the Approved Budget and/or the Wind-Down Budget), in each case,

pursuant to the DIP Orders and in accordance with the amounts set forth for such claims in the Approved Budget and/or Wind-Down Budget, as applicable.

18.     Because the Bankruptcy Court will review the reasonableness of the final fee applications under sections 328 and 330 of the Bankruptcy Code and any applicable case law, the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

**5.     Section 1129(a)(5) - Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy.**

19.     Article V.C of the Plan provides that, on the Effective Date, the Plan Administrator shall have authority over the Plan Administration Assets as a plan administration officer pursuant to the Plan Administration Agreement.  The initial Plan Administrator and the compensation for the Plan Administrator is set forth in the Plan Supplement.  The appointment of the Plan Administrator and the Wind Down process set forth in the Plan is consistent with the interests of Holders of Claims and Interests and with public policy.  The Plan therefore complies with section 1129(a)(5) of the Bankruptcy Code.

**6.     Section 1129(a)(6) - Approval of Rate Changes.**

20.     After the Confirmation Date, the Debtors will not have any businesses involving the establishment of rates over which any regulatory commission has or will have jurisdiction. Therefore, the provisions of section 1129(a)(6) do not apply to the Plan.

**7.     Section 1129(a)(7) - Best Interests of Holders of Claims and Interests.**

21.     With respect to each Impaired Class of Claims or Interests of the Debtors, each Holder of a Claim or Interest in such Impaired Class has either (i) accepted or is deemed to have accepted the Plan or (ii) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtors were liquidated on the Effective Date under chapter 7 of the

Bankruptcy Code on an individual or consolidated basis.  The Plan therefore complies with section 1129(a)(7) of the Bankruptcy Code.

**8.      Section 1129(a)(8) - Acceptance of Plan by Impaired Class.**

22.      Pursuant to sections 1124 and 1126 of the Bankruptcy Code: (a) as indicated in Article III.B of the Plan, Class 1 and Class 2 are not Impaired by the Plan and are deemed to have accepted the Plan; and (b) as indicated in the Voting Report, all Holders of Claims in Class 3 have voted to accept the Plan, satisfying the requirements of section 1126(c) of the Bankruptcy Code.

23.      Because the Holders of Claims and Interests in Classes 4, 5, 6, and 7 will not receive or retain any property on account of such Claims or Interests, Classes 4, 5, 6, and 7 are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code. Notwithstanding the lack of compliance with section 1129(a)(8) of the Bankruptcy Code with respect to Classes 4, 5, 6, and 7, the Plan is confirmable because, as described below, the Plan satisfies the "cramdown" requirements of section 1129(b) of the Bankruptcy Code with respect to such Classes.  Therefore, although the Plan does not meet the requirements of section 1129(a)(8) of the Bankruptcy Code with respect to such Classes, it can be confirmed under the provisions of section 1129(b) of the Bankruptcy Code.

**9.      Section 1129(a)(9) - Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

24.      Article II of the Plan provides for treatment of Administrative Claims and Priority Tax Claims, subject to certain bar date provisions consistent with Bankruptcy Rules 3002 and 3003, in the manner required by section 1129(a)(9) of the Bankruptcy Code.

25.      Pursuant to Article II.A.1 of the Plan, except with respect to Administrative Claims that are Statutory Fees and except to the extent that a Holder of an Allowed

Administrative Claim and the applicable Debtors agree to less favorable treatment for such Holder's Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall be paid in full in Cash on or as soon as reasonably practicable after the latest of: (a) the Effective Date; (b) the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable.  To the greatest degree possible, the Debtors shall pay Administrative Claims against the Debtors from funds in the Wind Down Reserve.

26.    Pursuant to Article II.B of the Plan, except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors agree to less favorable treatment for such Holder's Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will be paid in full in Cash on or as soon as reasonably practicable after the latest of: (a) the Effective Date; (b) the date such Priority Tax Claim is Allowed; and (c) the date such Allowed Priority Tax Claim becomes due and payable in accordance with non-bankruptcy law.  To the greatest degree possible, such payments shall be made from the Wind Down Reserve by the Plan Administrator.

27.    In light of the foregoing, the Plan complies with section 1129(a)(9) of the Bankruptcy Code.

**10.    Section 1129(a)(10) - Acceptance by at Least One Impaired Non-Insider Class.**

28.    As indicated in the Voting Report, at least one non-insider Class of Claims or Interests that is Impaired under the Plan has voted to accept the Plan.  Class 3 is Impaired and has voted to accept the Plan.  The Plan therefore complies with section 1129(a)(10) of the Bankruptcy Code.

**11.    Section 1129(a)(11) Feasibility of the Plan.**

29.    Based on the evidence in the record regarding the value of the Debtors' remaining assets, the Plan sets forth means of payment of the Debtors' obligations under the Plan in

accordance with the Bankruptcy Code and the Bankruptcy Rules and is feasible.  Because the

Plan and the Plan Administration Agreement provide for the liquidation and orderly wind down

of all of the Debtors' remaining assets, confirmation cannot be followed by any liquidation in

addition to that prescribed by the Plan or the Plan Administration Agreement, nor would

confirmation be followed by the need for further financial reorganization.  The Plan therefore

complies with section 1129(a)(11) of the Bankruptcy Code.

### 12.     Section 1129(a)(12) - Payment of Bankruptcy Fees.

30.     Notwithstanding anything in the Plan to the contrary, on or before the Effective

Date, all fees due and payable pursuant to 28 U.S.C. § 1930, shall be paid in full, in Cash.  The

Plan therefore complies with section 1129(a)(12) of the Bankruptcy Code.

### 13.     Section 1129(a)(13) – (16) of the Bankruptcy Code are Inapplicable.

31.     The Debtors are not (i) obligated to pay retiree benefits (as defined in

section 1114(a) of the Bankruptcy Code), (ii) required to pay any domestic support obligations,

(iii) individuals, or (iv) nonprofit corporations or trusts.   Accordingly, sections 1129(a)(13)

through (16) of the Bankruptcy Code are not applicable.

### 14.     Section 1129(b) - Confirmation of the Plan Over the Non-Acceptance of Impaired Classes.

32.     Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be

confirmed notwithstanding that Claims and Interests in Classes 4, 5, 6, and 7 are Impaired and

are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code

because  the Plan meets the "cramdown" requirements for confirmation under section 1129(b) of

the Bankruptcy Code.  Other than the requirement in section 1129(a)(8) of the Bankruptcy Code

with respect to Classes 4, 5, 6, and 7, all of the requirements of section 1129(a) of the

Bankruptcy Code have been met.  The Plan does not discriminate unfairly and is fair and

equitable with respect to Classes 4, 5, 6, and 7.  No Holders of Claims and Interests junior to the Claims and Interests in Classes 4, 5, 6, and 7 will receive or retain any property on account of their Claims and Interests, and no Holders of Claims senior to the Claims or Interests in Classes 4, 5, 6, and 7 are receiving more than full payment on account of the Claims in such Classes. The Plan therefore is fair and equitable and does not discriminate unfairly with respect to any of these Classes, and complies with section 1129(b) of the Bankruptcy Code.

### 15.    Section 1129(d) - Purpose of Plan.

33.    The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and there has been no objection filed by any governmental unit asserting such avoidance.  The Plan therefore complies with section 1129(d) of the Bankruptcy Code.

### 16.    Modifications to the Plan.

34.    The modifications made to the Plan since the commencement of solicitation of votes thereon, including to the extent the terms of this Confirmation Order may be construed to constitute modifications to the Plan (collectively, the "**Plan Modifications**"), do not individually or in the aggregate materially or adversely affect or change the treatment of any Claim against or Interest in any Debtor.  Accordingly, pursuant to Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the solicitation of acceptances or rejections under section 1126 of the Bankruptcy Code.   All references to the Plan in this Confirmation Order shall be to the Plan as so modified.

### 17.    Good Faith Participation.

35.    Based upon the record before the Bankruptcy Court, the Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on the Plan and, therefore, are not, and will not be, liable at any time for the

violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan. Therefore, they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent set forth in this Confirmation Order, the exculpatory and injunctive provisions set forth in Article X of the Plan.

## II.    CONCLUSIONS OF LAW.

### A.    JURISDICTION AND VENUE.

36.    The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Bankruptcy Court may enter a Final Order consistent with Article III of the United States Constitution. The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code. Venue of the Chapter 11 Cases in the United States District Court for the District of Delaware was proper as of the Petition Date, pursuant to 28 U.S.C. §§ 1408 and 1409, and continues to be proper.

### B.    COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE.

37.    As set forth above, the Plan complies in all respects with the applicable requirements of section 1129 of the Bankruptcy Code.

### C.    APPROVAL OF COMPROMISES, EXCULPATION, AND RELEASES PROVIDED UNDER THE PLAN.

38.    The settlements and compromises set forth in the Plan, as amended herein, (i) are approved as integral parts of the Plan; (ii) are fair, equitable, reasonable, and in the best interests of the Debtors and their respective Estates and the Holders of Claims and Interests; (iii) are approved as fair, equitable, and reasonable, pursuant to, among other authorities,

section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), to the extent applicable; and (iv) are effective and binding in accordance with their terms.

39.    Except as specifically set forth in this Confirmation Order, those exculpations, releases, waivers, and injunctions that are specifically set forth in the Plan, including in Article X of the Plan, (i) are approved as integral parts of the Plan; (ii) are consistent with applicable bankruptcy law, including that the releases provided by holders of claims and interests under section X.C of the Plan are consensual; and (iii) are effective and binding in accordance with their terms.

40.    In approving the releases to be given by the Debtors, the Bankruptcy Court has considered, among other things, the various factors set forth in *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110–11 (Bankr. D. Del. 1999).

### D.    AGREEMENTS AND OTHER DOCUMENTS.

41.    The Debtors have disclosed all material facts relating to the various contracts, instruments, releases, indentures and other agreements or documents to be entered into, executed and delivered, adopted or amended by them in connection with the Plan, including, without limitation, the Plan Administration Agreement and the Release Consideration Trust Agreement (collectively, the "**Plan Documents**").  No action of the Debtors' members, managers, or board of directors, as applicable, or the Plan Administrator will be required to authorize the Debtors to enter into, execute and deliver, adopt or amend, as the case may be, the Plan Documents, and following the Effective Date, each of the Plan Documents will be a legal, valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with the respective terms thereof.  Each Plan Document is hereby approved and shall be enforceable against the Plan Administration Trust and the Plan Administrator from and after the Effective Date.

**E.  REJECTIONS OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

42.     Each rejection of an Executory Contract or Unexpired Lease pursuant to Article VI of the Plan shall be legal, valid and binding upon the applicable Debtor and all non-debtor parties to such Executory Contracts or Unexpired Leases, all to the same extent as if such rejection had been effectuated pursuant to an appropriate authorizing order of the Bankruptcy Court entered prior to the Confirmation Date under section 365 of the Bankruptcy Code.

**III.  ORDER.**

**ACCORDINGLY, THE BANKRUPTCY COURT HEREBY ORDERS THAT:**

**A.  CONFIRMATION OF THE PLAN.**

43.     The Plan, a copy of which is attached hereto as **<u>Exhibit A</u>**, along with each of its provisions (whether or not specifically approved herein) and all operative exhibits and schedules thereto, is confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  The terms of the Plan, the Plan Supplement, and the exhibits and schedules thereto are incorporated by reference into this Confirmation Order, and the provisions of the Plan and this Confirmation Order are non-severable and mutually dependent.  Notwithstanding the foregoing and Article XII.L of the Plan, if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of the Plan shall control, except for the provisions set forth in section III.E of this Confirmation Order (addressing resolution of certain

formal and informal objections to confirmation), which shall control over any contrary provisions of the Plan.  All objections and other responses to, and statements and comments regarding, the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing are either (i) resolved or sustained on the terms set forth herein or (ii) overruled.

44.     The failure specifically to identify or refer to any particular provision of the Plan, the Plan Administration Agreement, the Release Consideration Trust Agreement, or any other agreement approved in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan, the Plan Administration Agreement, the Release Consideration Trust Agreement, and all other agreements approved by this Confirmation Order are approved in their entirety.

**B.      EFFECTS OF CONFIRMATION.**

**1.      Binding Nature of Plan Terms.**

45.     Notwithstanding any otherwise applicable law, from and after the entry of this Confirmation Order, the terms of the Plan and this Confirmation Order shall be deemed binding upon (i) the Debtors, (ii) any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the Holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan), (iii) any and all non-debtor parties to Executory Contracts and Unexpired Leases with any of the Debtors, and (iv) the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

**2.      Final Tax Returns; Officers, Directors, and Managers.**

46.     After the Effective Date, the Plan Administrator shall be authorized to file each Debtor's tax returns.  From and after the Effective Date, the Plan Administrator may dissolve

any Debtor Affiliate and complete the winding up of such Debtor Affiliates, including withdrawing the Debtors' business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, business operations, without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the subject Debtor as provided herein.

### 3.    The Plan Administration Process.

47.    On or before the Effective Date, the Debtors shall execute the Plan Administration Agreement and take all steps necessary to effectuate the Plan Administration Process.

48.    On or before the Effective Date, the Debtors shall fund from their Cash on hand, including any remaining Net Sale Proceeds, (i) the Initial Class 3 Distribution and, to the extent not already funded, (ii) the Wind Down Reserve, which shall vest in the Debtors and their Estates pursuant to Article V.C of the Plan as Plan Administration Assets.  On the Effective Date, the Plan Administrator shall have authority over the Plan Administration Assets as a plan administration officer pursuant to the Plan Administration Agreement.  Except as otherwise provided in the Plan, as of the Effective Date, all assets that remain property of the Debtors' Estates after the closing of the Sale Transaction, including the Wind Down Reserve (the "**Plan Administration Assets**"), shall vest in the Debtors' Estates for purposes of liquidating the Estates.  As of the Effective Date, all assets vested as Plan Administration Assets and all assets dealt with in this Plan shall be free and clear of all Liens, Claims, and Interests but for the Prepetition Second Liens and except as otherwise further provided in the Plan or this

Confirmation Order. Notwithstanding anything to the contrary in the Plan, the Plan Administration Assets shall not include the Professional Fee Escrow Account, but shall include a reversionary interest in any portion of the Professional Fee Escrow Account not used to satisfy Professional Fee Claims in accordance with the terms of the Plan.

### 4.    Release Consideration.

49.    The Plan Administrator and Release Consideration Trustee shall take all steps required to effectuate the Release Consideration Trust, if applicable, as set forth in Article V.D of the Plan.

50.    The Release Consideration Trustee shall have the same rights and powers as the Plan Administrator, as applicable, and as they pertain to the Release Consideration Trust.

### 5.    Approval of Executory Contract and Unexpired Lease Provisions and Related Procedures.

51.    The Debtors shall, as of the Effective Date, be deemed to have assumed and assigned to the Purchaser all Executory Contracts and Unexpired Leases, including any agreements, riders, schedules, certificates, memoranda, amendments, supplements, guaranties, and any other documents related thereto, identified on the Schedule of Assumed Contracts Filed with the Plan Supplement.

52.    Except as otherwise expressly set forth herein, all objections, if any, relating to the rejection or assumption and assignment of Remaining Contracts are overruled.  Notice of the time fixed for filing objections to such rejection was adequate, pursuant to the terms of the Disclosure Statement Order, the Sale Order, and in accordance with the precepts of due process.

53.    This Confirmation Order shall constitute an order of the Bankruptcy Court approving the foregoing rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date; *provided*, *however*, that nothing contained in Article VI of the Plan shall

constitute an admission by any Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor or its successors and assigns, has any liability thereunder.

54.     This Confirmation Order shall constitute an order of the Bankruptcy Court approving the foregoing assumptions and assignments pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, subject to payment of the Cure Costs (as defined in the Sale Order) in accordance with the procedures set forth in paragraph 26 of the Bidding Procedures Order and paragraphs 21 and 24 of the Sale Order.

### 6.     Prosecution of Causes of Action by the Plan Administrator.

55.     On the Confirmation Date, the Plan Administrator shall be authorized without further order to pursue and liquidate all Causes of Action, to the extent Causes of Action constitute Plan Administration Assets, and, in connection therewith shall be deemed substituted as the plaintiff and a party in interest in the place and stead of the Debtors pursuant to rule 25 of the Federal Rules of Civil Procedure and Bankruptcy Rules 7025 and 9014, in any and all actions, proceedings, contested matters, applications and motions.

### C.     CLAIMS, BAR DATES AND OTHER CLAIMS MATTERS.

### 1.     Bar Date for Professional Fee Claims

56.     The procedure for those Entities seeking an award by the Bankruptcy Court of Professional Fee Claims is set forth above in paragraph 17.  Any Holder of a Professional Fee Claim that is required to File a request for payment or proof of such Claims and that does not File such requests or proofs of Claim as noted herein shall be forever barred from asserting such Claims against the any of the Debtors or their Estates.

### 2.     Bar Date for Administrative Claims

57.     Except as otherwise provided in the Plan and section 503(b)(1)(D) of the Bankruptcy Code, unless previously Filed or paid, requests for payment of Administrative

Claims must be Filed and served on the Plan Administrator no later than the first Business Day that is thirty (30) days after service of the Notice of Effective Date (as defined below), which notice shall include the date of the Administrative Claims Bar Date, or such other date as approved by Final Order of the Bankruptcy Court, which shall be the deadline to File Administrative Claims (the "**Administrative Claims Bar Date**") *provided*, that the foregoing shall not apply to Holders of Claims under section 503(b)(1)(D) of the Bankruptcy Code, the Bankruptcy Court or U.S. Trustee as the Holders of Administrative Claims, or Holders of Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code (filing procedures for the latter of which are set forth in the Claims Bar Date Order).  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors and their respective Estates and property as of the Effective Date, absent order of the Bankruptcy Court to the contrary.  Nothing in Article II.A of the Plan shall limit, alter, or impair the terms and conditions of the Claims Bar Date Order with respect to the Claims Bar Date for Filing administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code.

### 3.    Bar Date for Rejection Damages Claims and Related Procedures.

58.    All Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan must be Filed with the Balloting Agent and served upon the Plan Administrator and counsel for the Debtors, as applicable, within thirty (30) days after service of the Notice of Effective Date, *provided*, that the foregoing deadline shall apply only to Executory Contracts or Unexpired Leases that are rejected automatically by operation of Article VI.A of the Plan, and the deadline for filing any rejection damage Claims relating to any Executory Contracts or Unexpired Leases rejected pursuant to separate Court order shall be the applicable deadline

27324740.1

US-DOCS\119405355.1

under such order, or if such order does not include such deadline, then the deadline under the Claims Bar Date Order. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a General Unsecured Claim against the applicable Debtor.

### D.     ACTIONS IN FURTHERANCE OF THE PLAN.

59.     The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Debtors prior to the Effective Date and the Plan Administrator on and after the Effective Date to take any and all actions necessary or appropriate to implement, effectuate and consummate, among other things, the Plan, the Plan Administration Agreement, the Release Consideration Trust Agreement, this Confirmation Order or the transactions contemplated thereby or hereby. In addition to the authority to execute and deliver, adopt or amend, as the case may be, the contracts, instruments, releases and other agreements specifically granted and approved in this Confirmation Order, the Debtors prior to the Effective Date and the Plan Administrator on and after the Effective Date are authorized and empowered, without further action in the Bankruptcy Court, to take any and all such actions as they may determine are necessary or appropriate to implement, effectuate and consummate, among other things, the Plan, the Plan Administration Agreement, the Release Consideration Trust Agreement, this Confirmation Order, or the transactions contemplated thereby or hereby. Pursuant to section 1142 of the Bankruptcy Code, no action of the Debtors or the Plan Administrator shall be required for any Debtor to enter into, execute and deliver, adopt or amend, as the case may be, any of the contracts, instruments, releases and other agreements or documents to be entered into, executed and delivered, adopted or amended in connection with the Plan, and, following the Effective Date, each of such contracts, instruments, releases, and other agreements shall be a legal, valid, and binding obligation of the applicable Debtor,

enforceable against such Debtor and its successors in accordance with its terms subject only to bankruptcy, insolvency, and other similar laws affecting creditors' rights generally and to general equitable principles. The Debtors, prior to the Effective Date, and the Plan Administrator, on and after the Effective Date, are authorized to execute, deliver, file or record such contracts, instruments, financing statements, releases mortgages, deeds, assignments, leases, applications, registration statements, reports or other agreements or documents and take such other actions as they may determine are necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, this Confirmation Order and the transactions contemplated thereby or hereby, all without further application to or order of the Bankruptcy Court and whether or not such actions or documents are specifically referred to in the Plan, the Plan Supplement, the Disclosure Statement, the Disclosure Statement Order, this Confirmation Order or the exhibits or supplements to any of the foregoing. The signature of any officer, manager or director of any Debtor prior to or on the Effective Date and the Plan Administrator or his designee after the Effective Date on a document executed in accordance with this Confirmation Order shall be conclusive evidence of such Person's determination that such document and any related actions are necessary and appropriate to effectuate and/or further evidence the terms and conditions of the Plan, this Confirmation Order, or the transactions contemplated thereby or hereby. Any officer, manager or director of any Debtor prior to the Effective Date and the Plan Administrator or his designee on or after the Effective Date are authorized to certify or attest to any of the foregoing actions. Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable nonbankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the equityholders, managers or directors of any of the Debtors, this Confirmation

Order shall constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors, managers and equityholders of the appropriate Debtor.

### E.    RESOLUTION OF CERTAIN FORMAL AND INFORMAL OBJECTIONS TO CONFIRMATION.

60.    Formal and informal objections to Confirmation are hereby resolved on the terms and subject to the conditions set forth below.

61.    **Texas Taxing Authorities.**  Notwithstanding any other provision of the Plan or this Confirmation Order, Secured Tax Claims held by Texas Taxing Authorities[5], to the extent Allowed, shall be paid as follows: (i) if no Objection to such Secured Tax Claim has been filed, within thirty (30) days after the Claims Objection Deadline, or as soon as reasonably practicable thereafter or (ii) if an objection to such Secured Tax Claim is filed on or before the Claims Objection Deadline, the Allowed amount of any such Claim shall be paid no later than fifteen (15) days following the date, if any, the Bankruptcy Court enters a Final Order determining such Claim is an Allowed Secured Tax Claim.  Secured Tax Claims asserted by Texas Taxing Authorities may include interest on such claims, if any, at the applicable statutory rate from the Petition Date through the date of payment to the extent permitted under sections 506 and 511 of the Bankruptcy Code, and all parties' rights with respect to any such Claims for interest (including any Claims for accrued pre- or postpetition interest) are reserved.  Notwithstanding the foregoing, if paid on or before January 31, 2021, such Secured Tax Claims may be paid without post-petition interest. Each Texas Taxing Authority holding a Secured Tax Claim shall retain its lien including, as applicable, as set forth in paragraph 45 of the Sale Order, for such

---

[5]    "**Texas Taxing Authorities**" means (a) those entities represented in the objections to Confirmation found at D.I. 533, D.I. 530, and D.I. 425, and (b) the following taxing authorities, located in Texas: Allen County; Allen ISD; Bexar County; Cypress - Fairbanks ISD; Dallas County; El Paso; Frisco; Harris County; Montgomery County; Northwest ISD; San Marcos CISD; and Tarrant County.

Secured Tax Claim (as ultimately Allowed) until the Allowed amount of such Claim is paid in full.  Nothing in the Plan or this Confirmation Order shall be deemed as an admission as to the validity of any Secured Tax Claim, including any claim for pre- or postpetition interest, or lien asserted as to any Secured Tax Claim, all parties' rights with respect to such Claims and liens being reserved.

62.    **Texas Comptroller of Public Accounts.** Within sixty (60) days after the Effective Date, the Plan Administrator shall file with the Texas Comptroller of Public Accounts (the "**Texas Comptroller**") all of the unclaimed property reports due to be filed on or before the Effective Date and identify the known unclaimed property being held (the "**Texas Unclaimed Property**") as required under Texas Property Code, Title 6, Chapters 72-76 and other applicable Texas laws (the "**Texas Unclaimed Property Laws**").  With respect to any such Texas Unclaimed Property reported and delivered to the Texas Comptroller pursuant to the prior sentence, the Texas Comptroller will not seek payment of any interest or penalty by the Estates or the Plan Administrator.  Notwithstanding Section 362 of the Bankruptcy Code and any injunction contained in the Plan, the Texas Comptroller and its agents may conduct an audit of the Debtors in accordance with the Texas Unclaimed Property Laws and pursue recovery of any unremitted Texas Unclaimed Property identified pursuant to the Texas Unclaimed Property Audit, and may file or amend any Proofs of Claim in accordance with the terms of the Plan in these Chapter 11 Cases following the Effective Date as a result of the filing of any property reports; provided, however, that the Debtors, Post-Effective Date Debtors, and Plan Administrator, as applicable, reserve all rights to object to such proofs of Claim.  The rights and defenses of the Debtors, their Estates, and the Plan Administrator with respect to any allegations and claims asserted against the Debtors and Plan Administrator arising from or relating to Texas

Unclaimed Property are hereby reserved.  Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity from any liability owed to the Texas Comptroller of Public Accounts for a tax debt or for Unclaimed Property, including any interest and/or penalties on such claim.  This provision is not an admission by any party that such liability exists or that any interest and/or penalties are subject to assessment.

63.     **Louisiana Department of Revenue.**  Notwithstanding any other provision of the Plan or this Confirmation Order, Priority Tax Claims held by the Louisiana Department of Revenue, to the extent Allowed, shall be paid as follows: (i) if no Objection to such Priority Tax Claim has been filed, within thirty (30) days after the Claims Objection Deadline, or as soon as reasonably practicable thereafter or (ii) if an objection to such Priority Tax Claim is filed on or before the Claims Objection Deadline, the Allowed amount of any such Claim shall be paid no later than fifteen (15) days following the date, if any, the Bankruptcy Court enters a Final Order determining such Claim is an Allowed Priority Tax Claim.  For the avoidance of doubt, any claim of the Louisiana Department of Revenue entitled to priority pursuant to 11 U.S.C. § 507(a)(8) shall be paid pursuant to 11 U.S.C. § 1129(a)(9)(C) with all post-Effective Date interest paid at the rate required by 11 U.S.C. § 511.

64.     **Commonwealth of Pennsylvania, Department of Revenue.**  Notwithstanding any other provision of the Plan or this Confirmation Order, any Priority Tax Claim held by the Commonwealth of Pennsylvania, Department of Revenue (a "**PA DOR Priority Claim**"), to the extent Allowed, shall be paid as follows: (i) if no Objection to such PA DOR Priority Tax Claim has been filed, within thirty (30) days after the Claims Objection Deadline, or as soon as reasonably practicable thereafter or (ii) if an objection to such Priority Tax Claim is filed on or before the Claims Objection Deadline, the Allowed amount of any such Claim shall be paid no

later than fifteen (15) days following the date, if any, the Bankruptcy Court enters a Final Order determining such Claim is an Allowed Priority Tax Claim.  For the avoidance of doubt, any PA DOR Claim entitled to priority pursuant to 11 U.S.C. § 507(a)(8) shall be paid pursuant to 11 U.S.C. § 1129(a)(9)(C) with all post-Effective Date interest paid at the rate required by 11 U.S.C. § 511, and any Allowed general unsecured claim for "trust fund taxes" asserted by the Commonwealth of Pennsylvania, Department of Revenue ("**PA DOR**") shall be paid on or as soon as reasonably practicable after the Effective Date as authorized by this Court's *Final Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Withholding Obligations and Other Compensation and Benefits (B) Maintain Employee Benefits Programs, and (C) Pay Related Administrative Obligations, and (II) Granting Related Relief* [Docket No. 194].  For the further avoidance of doubt, nothing in the Plan or this Confirmation Order shall compromise any rights of PA DOR against the Debtors' corporate officer(s) to seek recovery of state trust funds to the extent provided by applicable law.

65.    **Oracle America, Inc.**  By agreement of Oracle America, Inc. ("**Oracle**"), the Purchaser and the Debtors, the deadline to assume and assign any Executory Contract between Oracle and one or more Debtors (each an "**Oracle Contract**") shall be extended until such time as the Purchaser and Oracle reach an agreement regarding the terms for assumption and assignment of such Oracle Contract or the Purchaser gives notice to the Debtors and Oracle that such agreement will not be reached (at which time such Oracle Contract shall automatically be deemed rejected) (such period, the "**Oracle Designation Period**"); *provided*, *however*, that during the Oracle Designation Period, the Purchaser shall be responsible for all costs and fees incurred by the Plan Administrator or Post-Effective Date Debtors that arise under such Oracle Contract(s) on or after the Effective Date, and to the extent that the Plan Administrator makes

any payments on account thereof, the Purchaser shall promptly reimburse the Plan Administrator for such payments.  For the avoidance of doubt, the allocation of costs and fees incurred by the Debtors prior to the Effective Date as between the Debtors and the Purchaser shall be as set forth in the Asset Purchase Agreement.

### F.    EXCULPATION, INJUNCTION, AND RELEASES.

#### 1.    Releases.

66.    The releases set forth in Articles X.B and X.C of the Plan are hereby approved and authorized in their entirety.

67.    Article X.B. of the Plan provides:  **As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Debtors, the Post-Effective Date Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns and any and all other Persons that may purport to assert any Causes of Action derivatively, by or through the foregoing Persons, from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or**

**domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Post-Effective Date Debtors, or the Estates would have been legally entitled to assert, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the Post-Effective Date Debtors, or their Estates, the Chapter 11 Cases, the Sale Transaction, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Debtors' in or out-of-court restructuring and recapitalization efforts, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, the Asset Purchase Agreement, the Bidding Procedures Order, the Sale Transaction, the Sale Order, the Disclosure Statement, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation of votes with respect to this Plan, or any other act or omission.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any Person under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.   Moreover, the foregoing release shall have no effect on the liability of, or any Cause of Action against, any Entity that results from any act or omission that is determined in a Final Order to have constituted intentional fraud, criminal conduct, willful misconduct, or gross negligence.**

68.     Article X.C of the Plan provides: **As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, and the**

obligations contemplated by the Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns and any and all other Persons that may purport to assert any Causes of Action derivatively, by or through the Releasing Parties, from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Releasing Parties or their estates, heirs, executors, administrators, successors, assigns, and any Persons claiming under or through them would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Post-Effective Date Debtor (whether directly or derivatively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the Sale Transaction, the Post-Effective Date Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that

is treated in the Plan, the Debtors' in or out-of-court restructuring and recapitalization efforts, intercompany transactions between or among a Debtor and another Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, the Asset Purchase Agreement, the Bidding Procedures Order, the Sale Transaction, the Sale Order, the Disclosure Statement, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation of votes with respect to the Plan, or any other act or omission. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any Person under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Moreover, the foregoing release shall have no effect on the liability of, or any Cause of Action against, any Entity that results from any act or omission that is determined in a Final Order to have constituted intentional fraud, criminal conduct, willful misconduct, or gross negligence.

           2.      **Exculpation.**

69.    Article X.D of the Plan is approved, which provides: **To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be exculpated from, any Claim or Cause of Action arising from and including the Petition Date through the Effective Date of the Plan, in connection with or arising out of the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of the Plan, making Distributions, implementing the Plan Administration Process, the Disclosure Statement, the Sale Transaction, the Asset Purchase Agreement, the Sale Order, or the solicitation of votes for,**

**or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors; or the transactions in furtherance of any of the foregoing; other than (i) Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that constitutes intentional fraud, criminal conduct, willful misconduct, or gross negligence, as determined by a Final Order, and (ii) the Exculpated Parties' rights and obligations under the Plan, the Plan Supplement documents, and the Confirmation Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

### 3.    Permanent Injunction.

70.    Article X.E of the Plan is approved, which provides: This Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities that are released or exculpated in this Plan or this Confirmation Order, except there shall be no injunction of the defense of recoupment, or of any right of setoff against the Debtors to the extent timely asserted.

### G.    SUBSTANTIAL CONSUMMATION.

71.    Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

### H.    RETENTION OF JURISDICTION.

72.    Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will, on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as legally permissible, including, without limitation, jurisdiction to:

(1)    allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any such Claim or Interest;

(2)    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(3)    resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease and to adjudicate and, if necessary, liquidate, any Claims arising therefrom;

(4)    resolve any issues related to any matters adjudicated or otherwise subject to a Final Order in the Chapter 11 Cases;

(5)    ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(6)    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(7)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement or the Disclosure Statement;

(8)     resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Person or Entity's obligations incurred in connection with this Plan;

(9)     hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

(10)    hear and determine disputes arising in connection with the interpretation, implementation, enforcement of the Asset Purchase Agreement or other document(s) governing or relating to the Asset Purchase Agreement;

(11)    issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with Consummation or enforcement of the Plan;

(12)    enforce the terms and conditions of the Plan, the Confirmation Order, and the Definitive Documents;

(13)    resolve any cases, controversies, suits or disputes with respect to the Release, the Exculpation, the indemnification and other provisions contained in Article X hereof and enter such orders or take such other actions as may be necessary or appropriate to implement or enforce all such provisions;

(14)    enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

(15)    resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any release or exculpation adopted in connection with the Plan; and

(16)    enter an order concluding or closing the Chapter 11 Cases.

## I.     TERM OF INJUNCTIONS OR STAYS.

73.     Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**J.      EXEMPTION FROM CERTAIN TRANSFER TAXES AND FEES.**

74.      To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by any Debtor, or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**K.      REVERSAL.**

75.      In the absence of a stay of this Confirmation Order, if  any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of the Bankruptcy Court or any other court, such reversal, modification or vacatur shall not affect the validity or enforceability of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Post-Effective Date Debtors', Plan Administrator's, and Debtors' receipt of written notice of such order.   Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or

undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all related documents or any amendments or modifications thereto.

### L.       WAIVER OF STAY OF PLAN EFFECTIVENESS.

76.     Any applicable stay of effectiveness provided in Bankruptcy Rules 3020(e), 6004(h), and 7062, Federal Rule of Civil Procedure 62(a), or otherwise shall not apply to this Confirmation Order and (a) this Confirmation Order shall be effective and enforceable immediately upon its entry and (b) subject to the occurrence of the Effective Date, the provisions of the Plan shall be immediately effective and enforceable and deemed binding upon any Holder of a Claim against or Interest in the Debtors, such Holder's respective successors and assigns (whether or not the Claim or Interest of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a Distribution under the Plan), all Entities that are party or subject to the settlements, compromises, releases, and injunctions described in the Plan, and any and all non-Debtor counterparties to Executory Contracts, Unexpired Leases, and any other prepetition agreements. The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of the conditions precedent to the Effective Date set forth in Article IX of the Plan.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Supplement, and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

### M.      NOTICE OF EFFECTIVE DATE.

77.     The Debtors are directed to File and serve a notice of the occurrence of the Effective Date, substantially in the form attached hereto as <u>Exhibit B</u> (the "**Notice of Effective**

**Date**") promptly following the occurrence of the Effective Date on all parties that received notice of the Confirmation Hearing, all parties who have filed a request for notice under Bankruptcy Rule 2002 prior to the Effective Date, and all counterparties to the Executory Contracts or Unexpired Leases that are deemed rejected or assumed and assigned pursuant to the Plan and such service shall be deemed to comply with the requirements of Bankruptcy Rules 2002(a)(7), 2002(f)(3) and (f)(7), 2002(l), 3002(c)(4) and 3020(c)(2).  The Notice of Effective Date shall include the date of the Administrative Claims Bar Date and the bar date to file claims for rejection damages as to Executory Contracts or Unexpired Leases rejected as of the Effective Date.

### N.    FINAL ORDER.

78.    This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.


**Dated: November 17th, 2020**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**

27324740.1

US-DOCS\119405355.1