**<u>EXHIBIT A</u>**

**Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------ x
                                                       :
In re:                                                 :     Chapter 11
                                                       :
Lucky Brand Dungarees, LLC, et al.,¹                   :     Case No. 20-11768 (CSS)
                                                       :
                        Debtors.                       :     (Jointly Administered)
                                                       :
------------------------------------------------------ x
```

---

### SECOND AMENDED JOINT PLAN OF LIQUIDATION
### FOR LUCKY BRAND DUNGAREES, LLC AND ITS AFFILIATE DEBTORS UNDER
### CHAPTER 11 OF THE BANKRUPTCY CODE

---

**LATHAM & WATKINS LLP**

George A. Davis (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
885 Third Avenue
New York, New York 10022
Telephone:  (212) 906-1200
Facsimile:   (212) 751-4864

-and-

Ted A. Dillman (admitted *pro hac vice*)
Christina M. Craige (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Andrew L. Magaziner (No. 5426)
Joseph M. Mulvihill (No. 6061)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile:  (302) 571-1253

*Counsel to the Debtors and Debtors-in-Possession*

Dated:  November 11, 2020
        Wilmington, Delaware

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Lucky Brand Dungarees, LLC (3823), LBD Parent Holdings, LLC (4563), Lucky Brand Dungarees Stores, LLC (7295), Lucky PR, LLC (9578), and LBD Intermediate Holdings, LLC (7702).  The Debtors' address is 540 S Santa Fe Avenue, Los Angeles, California 90013.

# TABLE OF CONTENTS

Page

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS ...................................................................................4

    A.    Rules of Interpretation; Computation of Time.......................................4
    B.    Defined Terms ........................................................................................5

ARTICLE II. ADMINISTRATIVE AND PRIORITY TAX CLAIMS ...................................19

    A.    Administrative Claims ..........................................................................19
          1.    General Administrative Claims.................................................19
          2.    Professional Fee Claims...........................................................20
          3.    Statutory Fees...........................................................................20
    B.    Priority Tax Claims...............................................................................21

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ...................................................................................21

    A.    Summary...............................................................................................21
    B.    Classification and Treatment of Claims and Interests .........................22
          1.    Class 1 – Other Priority Claims ...............................................22
          2.    Class 2 – Other Secured Claims...............................................23
          3.    Class 3 – Second Lien Term Loan Claims................................23
          4.    Class 4 – General Unsecured Claims........................................23
          5.    Class 5 – Intercompany Claims ................................................24
          6.    Class 6 – Intercompany Interests .............................................24
          7.    Class 7 – Existing LBD Interests .............................................24
    C.    Special Provision Governing Unimpaired Claims ...............................24
    D.    Elimination of Vacant Classes .............................................................25

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN .............................................25

    A.    Presumed Acceptance of Plan...............................................................25
    B.    Presumed Rejection of Plan ..................................................................26
    C.    Voting Class..........................................................................................26
    D.    Acceptance by Impaired Class of Claims .............................................26
    E.    Voting Class; Presumed Acceptance by Non-Voting Classes ..............26
    F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ................................................................................26

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN .........................................26

    A.    Transactions Effective as of the Effective Date....................................27
    B.    Plan Administrator ................................................................................27
          1.    Appointment .............................................................................27

US-DOCS\118286705.9

　　　2.　　　Authority ................................................................................27
C.　　The Plan Administration Process .............................................................29
D.　　Release Consideration ............................................................................29
E.　　Wind-Up and Dissolution; Closing Cases of Debtor Affiliates ............................30
F.　　Corporate Action ...................................................................................31
G.　　Exemption From Certain Transfer Taxes ..................................................31
H.　　Effectuating Documents; Further Transactions ........................................31
I.　　Directors, Managers, and Officers of the Debtors ..................................31
J.　　Insurance Policies .................................................................................32
K.　　Preservation of Rights of Action ............................................................33
L.　　Closing of the Lucky Brand Case ............................................................34

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
　　LEASES ....................................................................................................34

A.　　Assumption of Executory Contracts and Unexpired Leases ....................34
B.　　Preexisting Obligations to the Debtors Under Executory Contracts and
　　Unexpired Leases ...................................................................................34
C.　　Rejection Damages Claims ......................................................................35
D.　　Nonoccurrence of Effective Date ...........................................................35

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ............................................35

A.　　Timing and Calculation of Amounts to Be Distributed; Entitlement to
　　Distributions; Funding of Disbursements ..............................................35
　　　1.　　　Timing and Calculation of Amounts to Be Distributed ............35
　　　2.　　　Entitlement to Distributions ......................................................35
　　　3.　　　Funding of Disbursements ........................................................36
B.　　Disbursing Agent ...................................................................................36
　　　1.　　　No Liability ..............................................................................36
C.　　Distributions on Account of Claims Allowed After the Effective Date ...............36
　　　1.　　　Payments and Distributions on Disputed Claims .....................36
　　　2.　　　Special Rules for Distributions to Holders of Disputed Claims ................36
D.　　Delivery of Distributions and Undeliverable or Unclaimed Distributions ............37
　　　1.　　　Delivery of Distributions in General ........................................37
　　　2.　　　Undeliverable Distributions and Unclaimed Property ..............37
E.　　Compliance with Tax Requirements/Allocations ....................................37
F.　　Surrender of Cancelled Instruments or Securities ..................................38
G.　　Claims Paid or Payable by Third Parties ................................................38
　　　1.　　　Claims Paid by Third Parties ....................................................38
　　　2.　　　Claims Payable to Third Parties ...............................................39
　　　3.　　　Applicability of Insurance Policies ...........................................39
H.　　Allocation of Plan Distributions between Principal and Interest ............................39
I.　　Objection Deadline ................................................................................39
J.　　De Minimis Distributions ......................................................................39

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS ............................................................40

    A.       Allowance and Disallowance of Claims ............................................40
    B.       Prosecution of Objections to Claims...................................................40
    C.       Estimation of Claims.............................................................................40
    D.       Distributions After Allowance .............................................................41

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ...........................................................................41

    A.       Conditions Precedent to Confirmation.................................................41
    B.       Conditions Precedent to the Effective Date ........................................41
    C.       Waiver of Conditions............................................................................42
    D.       Effect of Non-Occurrence of Conditions to Confirmation or
            Consummation .....................................................................................43

ARTICLE X. RELEASE, INJUNCTION AND RELATED PROVISIONS ...............43

    A.       General ..................................................................................................43
    B.       Debtor Release .....................................................................................43
    C.       Release by Holders of Claims and Interests ........................................44
    D.       Exculpation ..........................................................................................45
    E.       Permanent Injunction ...........................................................................46
    F.       Setoffs ..................................................................................................46
    G.       Release of Liens...................................................................................46
    H.       Post-Effective Date Personnel .............................................................46
    I.       Integral Part of Plan .............................................................................47

ARTICLE XI. RETENTION OF JURISDICTION....................................................47

ARTICLE XII. MISCELLANEOUS PROVISIONS .................................................49

    A.       Statutory Committee .............................................................................49
    B.       Modification of Plan ............................................................................49
    C.       Revocation or Withdrawal of Plan.......................................................49
    D.       Successors and Assigns.........................................................................50
    E.       Reservation of Rights............................................................................50
    F.       Further Assurances................................................................................50
    G.       Severability ..........................................................................................50
    H.       Service of Documents ...........................................................................51
    I.       Governing Law .....................................................................................52
    J.       Tax Reporting and Compliance ............................................................52
    K.       Schedules ..............................................................................................52
    L.       Conflicts...............................................................................................53
    M.       No Strict Construction ..........................................................................53
    N.       Entire Agreement ..................................................................................53
    O.       2002 Notice Parties ..............................................................................53

**SECOND AMENDED JOINT PLAN OF LIQUIDATION FOR**
**LUCKY BRAND DUNGAREES, LLC AND ITS AFFILIATE DEBTORS**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Lucky Brand Dungarees, LLC, LBD Parent Holdings, LLC, Lucky Brand Dungarees Stores, LLC, Lucky PR, LLC, and LBD Intermediate Holdings, LLC (each a "**Debtor**" and, collectively, the "**Debtors**") jointly propose the following chapter 11 plan of liquidation (the "**Plan**") for the resolution of the outstanding Claims (as defined below) against, and Interests (as defined below) in, each of the Debtors. Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against and Interests in each Debtor pursuant to the Bankruptcy Code (as defined below). The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtors' history, business, results of operations, and historical financial information, and for a summary and analysis of this Plan, the treatment provided for herein and certain related matters. There also are other agreements and documents, which will be Filed with the Bankruptcy Court (as defined below), that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Schedules (each as defined below). All such Exhibits and Plan Schedules are incorporated into and are a part of this Plan as if set forth in full herein. Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127, Fed. R. Bankr. P. 3019 and the terms and conditions set forth in this Plan, the Debtors, after consultation with the Second Lien Lenders and the Committee, reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

**ARTICLE I.**
**RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS**

A.    *Rules of Interpretation; Computation of Time*

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced item will be substantially in that form or substantially on those terms and conditions; (c) except as otherwise provided herein, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document will mean as it may be amended, modified or supplemented from time to time; (d) any reference to an Entity as a Holder of a Claim or an Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references herein to "Articles", "Sections", "Exhibits" and "Plan Schedules" are references to Articles, Sections, Exhibits and Plan Schedules hereof or hereto; (f) unless otherwise stated, the words "herein," "hereof," "hereunder"

4

and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, indenture, or other agreement or document entered into in connection with this Plan and except as expressly provided in herein, the rights and obligations arising pursuant to this Plan will be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (i) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to this Plan; (j) references to a specific article, section, or subsection of any statute, rule, or regulation expressly referenced herein will, unless otherwise specified, include any amendments to or successor provisions of such article, section, or subsection; (k) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules will have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) references to "shareholders," "directors," and/or "officers" will also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (m) all references to statutes, regulations, orders, rules of courts, and the like will mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) will apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to this Plan will occur on a day that is not a Business Day, then such transaction will instead occur on the next succeeding Business Day.

B.    *Defined Terms*

Unless the context otherwise requires, the following terms will have the following meanings when used in capitalized form herein:

"*Administrative Claim*" means any unpaid Claim for costs and expenses of administration during the Chapter 11 Cases pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(a)(2), 507(b) of the Bankruptcy Code other than the DIP Facility Claims and Professional Fee Claims, including, without limitation: (a) any actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Claims pursuant to section 503(b)(9) of the Bankruptcy Code; (c) all fees and charges assessed against the Estates under section 1930, chapter 123, of title 28, United States Code; and (d) all postpetition stub rent or other postpetition amounts due and owing to landlords under the Debtors' Rejected Leases for the period commencing on the Petition Date and ending on the effective date of such rejection.

"*Administrative Claims Bar Date*" means the Business Day that is thirty (30) days after service of notice of the Effective Date, which notice shall include the date of the Administrative Claims Bar Date, or such other date as approved by Final Order of the Bankruptcy Court, which shall be the deadline to File Administrative Claims.

"*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

"*Allowed*" means, all or a portion of any Claim or Interest (a) that has been listed by the Debtors in their Schedules as liquidated in amount and not "disputed" or "contingent," and with respect to which no contrary Claim or proof of Interest has been Filed, and as to which no objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court,  (b) filed in the Chapter 11 Cases as to which no objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (c) as to which any objection has been settled, waived, withdrawn or denied by a Final Order, or (d) that is allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and the Debtors prior to the Effective Date, or the Plan Administrator or Release Consideration Trustee, as applicable, on or after the Effective Date or (iii) pursuant to the terms of this Plan.  For purposes of computing Distributions under this Plan, a Claim that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Plan.  For the avoidance of doubt, any Claim that relates to obligations that were assumed by the Purchaser pursuant to the Asset Purchase Agreement shall not be an Allowed Claim for purposes of this Plan.

"*Approved Budget*" has the meaning set forth in the DIP Orders.

"*Asset Purchase Agreement*" means the asset purchase agreement by and between the Debtors and the Purchaser (as amended, modified or supplemented from time to time), attached to the Sale Order as Exhibit A.

"*Avoidance Action*" means any action commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

"*Ballot*" means the ballot accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of this Plan in accordance with this Plan and the procedures governing the solicitation process, and which must be actually received by the Balloting Agent on or before the Voting Deadline.

"*Balloting Agent*" means Epiq Corporate Restructuring, LLC, in its capacity as notice and balloting agent for the Debtors.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., as amended from time to time, as applicable to the Chapter 11 Cases.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases.

6

"*Bidding Procedures Order*" means the order of the Bankruptcy Court approving bidding procedures for the sale of the Debtors' assets [Docket No. 251].

"*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Cash Collateral*" has the meaning set forth in the DIP Orders.

"*Causes of Action*" means any action, Claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, Secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  Cause of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; and (c) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

"*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered and procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

"*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code, against the Debtors or the Estates, whether or not asserted or Allowed.

"*Claims Bar Date*" means the applicable deadline by which Proofs of Claim must be Filed under the Claims Bar Date Order.

"*Claims Bar Date Order*" means the order of the Bankruptcy Court establishing the deadline by which certain Proofs of Claim against the Debtors must be Filed [Docket No. 342].

"*Claims Objection Deadline*" means the date that is six (6) months after the Effective Date, which such date may be extended by the applicable Plan Administrator, or Release Consideration Trustee, as applicable, with the approval of the Bankruptcy Court, following service of notice of a motion requesting such extension to all affected Holders of Claims.

"*Class*" means a category of Holders of Claims or Interests as set forth in <u>Article III</u> hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

"*Class 3 Distribution*" means the Initial Class 3 Distribution and the Final Class 3 Distribution.

"*Committee*" means the Official Committee of Unsecured Creditors (and all subcommittees thereof) appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as such committee may be reconstituted from time to time.

"*Committee Trustee*" means the individual designated by the Committee, who will be disclosed as Committee Trustee in the Plan Supplement.

"*Committee Trustee Expenses*" means reasonable and documented fees and expenses incurred by the Committee Trustee prior to formation of the Release Consideration Trust in an amount up to $10,000, which may be funded (i) from the Wind-Down Reserve, provided that (a) any Release Consideration then funded to the Release Consideration Trust is net of such pre-funded amounts and (b) in the event no Release Consideration Trust is created, any Committee Trustee Fees will reduce dollar-for-dollar any Release Consideration that would otherwise be distributed by the Plan Administrator; or (ii) from the Release Consideration Trust after it is funded.

"*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A hereof having been: (a) satisfied; or (b) waived pursuant to Article IX.C hereof.

"*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

"*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court regarding Confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"*Confirmation Order*" means the final, non-appealable order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, supplemented, or modified from time to time.

"*Consummation*" means the occurrence of the Effective Date of this Plan.

"*Contract Notice*" means the notice provided to certain counterparties to Executory Contracts and Unexpired Leases pursuant to the Solicitation Procedures.

"*D&O Insurance Coverage*" means coverage for insureds under any applicable D&O Policies.

"*D&O Policies*" means all Insurance Policies (including policies providing D&O Tail Coverage) and related agreements of indemnity for directors', members', trustees' and officers' liability that have been issued at any time to, or provided coverage to, any of the Debtors or their Representatives and all agreements, documents or instruments relating thereto, for any policy period whatsoever.

"*D&O Tail Coverage*" means the extension of the D&O Insurance Coverage for any period beyond the end of the policy period, including but not limited to any extension for a period of six (6) years after the Effective Date for claims based on conduct occurring prior to the Effective Date.

"*Debtor Release*" has the meaning set forth in Article X.B herein.

"*Debtor Released Claims*" has the meaning set forth in Article III.C herein.

"*Definitive Documents*" shall include all definitive documents and agreements governing the transactions contemplated hereunder, including, without limitation, this Plan (including the Plan Supplement and all other exhibits and supplements hereto), the Disclosure Statement and other solicitation materials, and the Confirmation Order.

"*DIP Claims*" means any Claims held by the DIP Secured Parties arising under the DIP Promissory Note.

"*DIP Lender Representative*" means Lantern Capital Partners, in its capacity as administrative agent and collateral agent under the DIP Promissory Note.

"*DIP Lenders*" means, collectively, Lantern Capital Partners, ReStore Capital, LLC, and Clover Holdings II, LLC.

"*DIP Orders*" means, together, the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 507 and 552 (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Use Cash Collateral; (II) Granting Adequate Protection to the Prepetition Lenders; (III) Granting Liens and Superpriority Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 93] and *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 507 and 552 (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Use Cash Collateral; (II) Granting Adequate Protection to the Prepetition Lenders; (III) Granting Liens and Superpriority Claims; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 246].

"*DIP Promissory Note*" means that certain Superpriority Junior Debtor-In-Possession Secured Promissory Note, dated as of July 7, 2020, as amended, restated, supplemented or otherwise modified from time to time.

"*DIP Secured Parties*" means, together, the DIP Lenders and the DIP Lender Representative.

"*Disallowed*" means, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtors which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Debtors, Plan Administrator, or Release Consideration Trustee, as applicable, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a Proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to this Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated by a Final Order of the Bankruptcy Court, but only to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any Proof of Claim or proof of Interest; (vi) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; and (vii) where the Holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code

9

or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code.  In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

"*Disbursing Agent*" means the Debtors or the Entity or Entities chosen (at any time) by the Debtors to make or facilitate Distributions pursuant to this Plan.  For the avoidance of doubt, the Plan Administrator may serve as the Disbursing Agent.

"*Disclosure Statement*" means the *Disclosure Statement for the First Amended Joint Plan of Liquidation of Lucky Brand Dungarees, LLC and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, dated October 5, 2020, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to this Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law.

"*Disputed*" means, with respect to any Claim, that (a) is neither Allowed nor Disallowed under this Plan or a Final Order, nor deemed Allowed under sections 502, 503 or 1111 of the Bankruptcy Code; or (b) any party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.

"*Distribution*" means a distribution made or facilitated by the Disbursing Agent pursuant to this Plan.

"*Distribution Date*" means a date or dates, as determined by the Disbursing Agent in accordance with the terms of this Plan, on which the Disbursing Agent makes a Distribution to Holders of Allowed Claims.

"*Effective Date*" means the first business date on which all of the conditions specified in Article IX.B hereof have been satisfied or waived pursuant to Article IX.C hereof.

"*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

"*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

"*Exculpated Parties*" means collectively: (a) the Debtors; (b) the Debtors' Estates, (c) the directors and officers of the Debtors who served during any portion of the Chapter 11 Cases, (d) the Debtors' professionals retained in these cases, (e) the Committee, (f) the individuals who sat on the Committee, in their capacity as such, (g) the Committee's professionals retained in these cases, (h) the Plan Administrator, (i) the Committee Trustee, and (j) the Release Consideration Trustee.

"*Exculpation*" means the exculpation provision set forth in Article X.D hereof.

"*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"*Exhibit*" means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time).

"*Existing LBD Interests*" means all Interests in LBD, including common stock, preferred stock and any options, warrants or rights to acquire any such Interest.

"*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

"*Final Class 3 Distribution*" means all remaining Plan Administration Assets following the substantial completion of the Plan Administration Process net of any (a) Release Consideration, and (b) reserves necessary to complete the Plan Administration Process in accordance with the Wind Down Budget.

"*Final Order*" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

"*First Lien Agent*" means Wells Fargo Bank, National Association as administrative agent, term loan agent, and collateral agent under the First Lien Credit Agreement.

"*First Lien Claims*" means Claims held by the First Lien Lenders.

"*First Lien Credit Agreement*" means that certain Third Amended and Restated Credit Agreement, dated as of November 12, 2019, as amended, restated, amended and restated, supplemented or otherwise modified from time to time, by and among Debtor Lucky Brand Dungarees, LLC, Debtor LBD Intermediate Holdings, LLC, Wells Fargo Bank, National Association, and Gordon Brothers Finance Company, LLC.

"*First Lien Lenders*" means the lenders under the First Lien Credit Agreement.

"*General Unsecured Claim*" means any unsecured Claim against any of the Debtors that is not an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, a Professional Fee

Claim, a First Lien Claim, a Second Lien Term Loan Claim, an Other Secured Claim, an Intercompany Claim, or a Section 510(b) Claim.

"*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"*Holder*" means any Person or Entity that is the owner of record of a Claim or an Interest, as applicable.

"*Impaired*" means, with respect to a Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"*Initial Class 3 Distribution*" means the difference between Net Sale Proceeds held by the Debtors on the Effective Date and the sum of (i) amounts placed in the Wind Down Reserve consistent with the Wind Down Budget (except to the extent such amounts provided under the Wind Down Budget have already been paid, in which case such amounts shall act as a deduct from the Wind Down Reserve), (ii) amounts placed in the Professional Fee Escrow Account consistent with the Approved Budget and the Wind Down Budget, and (iii) any amounts deposited into segregated accounts for the benefit of certain creditors pursuant to the Sale Order or other order of the Bankruptcy Court.

"*Insurance Policy*" means all insurance policies and related agreements of indemnity that have been issued at any time to, or provide coverage to, any of the Debtors (or their predecessors) and all agreements, documents, or instruments relating thereto.

"*Insurer*" means any company or other Entity that issued any Insurance Policy, any third party administrator, and any respective predecessors or affiliates thereof.

"*Intercompany Claim*" means a Claim against any Debtor by another Debtor or the Debtors' non-Debtor affiliate, Lucky Brand Dungarees Canada, Inc.

"*Intercompany Interest*" means an Interest in a Debtor held by another Debtor.

"*Interests*" means, collectively, (a) any equity security (as defined in section 101(16) of the Bankruptcy Code) or any other equity or ownership interest (including any such interest in a partnership, limited liability company, or other Entity) in any Debtor, and (b) any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, earn-out rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, including arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

"*IRC*" means the U.S. Internal Revenue Code of 1986, as amended.

"*LBD*" means Debtor LBD Parent Holdings, LLC.

"*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"*Lucky Brand*" means Debtor Lucky Brand Dungarees, LLC.

US-DOCS\118286705.9

"*Net Sale Proceeds*" means all Cash proceeds of the Sale Transaction distributed to the Debtors upon or following closing of the Sale Transaction in accordance with the terms of the Asset Purchase Agreement.

"*Notice of Non-Voting Status*" means the notice provided to Holders of Claims and Interests in Classes 1, 2, 4, 5, and 7 pursuant to the Solicitation Procedures.

"*Opt-In Release Form*" means, as applicable, Exhibit 8 attached to the order approving the Solicitation Procedures Motion and the form attached to the Contract Notice.

"*Other Priority Claim*" means any unpaid Claim against any of the Debtors entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

"*Other Secured Claim*" means any unpaid Secured Claim against any of the Debtors, including but not limited to any Secured Tax Claim, and excluding any First Lien Claims, Second Lien Term Loan Claims, and DIP Claims.

"*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

"*Petition Date*" means July 3, 2020.

"*Plan Administration Agreement*" means the liquidating agreement to be entered into by and among the Debtors and the Plan Administrator regarding administration of the Plan Administration Process, which agreement shall be included in the Plan Supplement.

"*Plan Administration Assets*" shall have the meaning given to such term in Article V.C of this Plan.

"*Plan Administration Expenses*" means reasonable and documented fees, expenses, and costs incurred by the Plan Administrator in connection with carrying out the obligations under the Plan, including the maintenance or disposition of the Plan Administration Assets (including, but not limited to, Plan Administrator fees, attorneys' fees, the fees of professionals, and other Persons retained by the Plan Administrator, personnel-related expenses and any Taxes imposed on the Plan Administration Assets), and any other expenses incurred in accordance with the Plan Administration Agreement, all of which shall be subject to the Wind Down Budget.

"*Plan Administration Process*" means the process for reconciling and paying Claims (including contesting and resolving Disputed Claims and claims estimation) as described in Article VIII of this Plan), the making of Distributions to holders of Allowed Claims in accordance with the Plan, and implementing the Wind Down (including dissolving the Debtors), all subject to and in accordance with the Wind Down Budget; *provided, however*, that the Plan Administration Process shall not include administration of the Release Consideration Trust, including any Claim allowance process undertaken by the Release Consideration Trustee as to Class 4 Claims.

"*Plan Administrator*" means the person or Entity or any successor(s) thereto pursuant to the terms of the Plan Administration Agreement, which shall be jointly chosen by the Debtors, the Second Lien Lenders, and the Committee to act as the administrator of the Plan Administration

US-DOCS\118286705.9

Process in accordance with the terms of the Plan Administration Agreement. Such person or Entity shall be disclosed in the Plan Supplement.

"*Plan Record Date*" means the record date for purposes of determining which Holders of Allowed Claims are eligible to receive Distributions under this Plan and which Holders of Allowed Claims in Class 4 are eligible to participate in the Release Consideration (subject to satisfaction of the requirements in Article V.D hereof), which date shall be (a) the date upon which the Bankruptcy Court approves the Disclosure Statement or (b) such other date as designated in a Final Order of the Bankruptcy Court.

"*Plan Schedule*" means a schedule annexed to this Plan or an appendix to the Disclosure Statement (as amended, modified or otherwise supplemented from time to time).

"*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Exhibits and Plan Schedules, all of which are incorporated by reference into, and are an integral part of, this Plan, as all of the same may be amended, supplemented, or modified from time to time. The Exhibits and Plan Schedules (or substantially final forms thereof) will be Filed with the Bankruptcy Court at least seven (7) days prior to the deadline to object to Confirmation.

"*Post-Effective Date Debtors*" means the Debtors after the Effective Date.

"*Prepetition Lenders*" means, together, the First Lien Lenders and the Second Lien Lenders.

"*Prepetition Second Liens*" has the meaning set forth in the DIP Orders.

"*Prior First Lien Payment*" means the payment of certain Cash proceeds of the Sale Transaction to the First Lien Agent prior to the Effective Date in accordance with the DIP Orders and the Sale Order.

"*Prior Second Lien Payment*" means the payment of certain Cash proceeds of the Sale Transaction to the Second Lien Agent for the benefit of the Second Lien Lenders prior to the Effective Date in accordance with the Sale Order.

"*Priority Tax Claim*" means any unpaid unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"*Professional Fee Claim*" means a Claim for professional services, including legal, financial, advisory, accounting, and other services, rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtors or the Committee pursuant to sections 327, 328, or 1103 of the Bankruptcy Code in the Chapter 11 Cases, or under 503(b)(4), *provided, however*, that any party making a claim under 503(b)(4) must file a motion seeking authority for payment of any such claim.

"*Professional Fee Escrow Account*" means the Carve-Out Account as defined in the DIP Orders held by Young Conaway Stargatt & Taylor, LLP, in accordance with such orders.

"*Proof of Claim*" means a proof of claim Filed against any of the Debtors in the Chapter 11 Cases.

"*Purchaser*" means SPARC Group, LLC.

"*Rejected Leases*" means collectively, those Unexpired Leases that have been rejected by the Debtors.

"*Release Consideration*" means (i) the first $500,000 of savings from the Wind-Down Budget, which would otherwise be available as part of the Class 3 Distribution; and (ii) 50% of the next $1 million in savings from the Wind-Down Budget that would otherwise be available as part of the Class 3 Distribution, up to an additional $500,000; it being understood that the maximum amount of the Release Consideration is no greater than $1 million. Notwithstanding anything to the contrary contained in this Plan, any fees or expenses associated with the reconciliation of Class 4 Claims and the Distribution of the Release Consideration to Holders of Allowed Claims in Class 4 (including but not limited to all Committee Trustee Expenses and Release Consideration Trust Expenses) shall be payable solely from, and act as a reduction toward, the Release Consideration.

"*Release Consideration Recipient*" means a Holder of an Allowed Claim in Class 4 that (i) has returned (and has not revoked or rescinded) an Opt-In Release Form in accordance with the Solicitation Procedures at or before Confirmation of this Plan and has checked the box therein to approve the releases set forth in Article X.C herein and (ii) has not objected to, or otherwise sought to impede, Confirmation of this Plan. For the avoidance of doubt, the Second Lien Lenders shall not be Release Consideration Recipients on account of any Second Lien Deficiency Claim.

"*Release Consideration Trust*" means the liquidating trust to be formed by the Plan Administrator pursuant to Article V.D of this Plan.

"*Release Consideration Trust Agreement*" means the liquidating trust agreement to be entered into by and among the Plan Administrator and Release Consideration Trustee with respect to the Release Consideration Trust, the form of which shall be included in the Plan Supplement.

"*Release Consideration Trust Expenses*" means Release Consideration Trust Pre-Funding Expenses and Release Consideration Trust Post-Funding Expenses.

"*Release Consideration Trust Post-Funding Expenses*" means reasonable and documented fees, expenses, and costs incurred by the Release Consideration Trustee in connection with the Release Consideration Trust after formation and funding of the Release Consideration Trust, which shall be funded from, and act as a deduct to, the Release Consideration.

"*Release Consideration Trust Pre-Funding Expenses*" means reasonable and documented fees, expenses, and costs incurred by the Release Consideration Trustee in connection with the Release Consideration Trust prior to funding of the Release Consideration Trust, which may be funded (i) from the Wind-Down Reserve, provided that the Release Consideration then funded to

15

the Release Consideration Trust is net of such pre-funded amounts or (ii) from the Release Consideration Trust after it is funded.

"*Release Consideration Trustee*" means the trustee of the Release Consideration Trust, if formed, who shall be the Committee Trustee.

"*Released Parties*" means collectively: (a) the Debtors; (b) the Debtors' Estates, (c) the DIP Lenders, (d) the DIP Lender Representative, (e) the First Lien Lenders, (f) the First Lien Agent, (g) the Second Lien Lenders, (h) the Second Lien Agents, (i) the members of the Committee, in their capacity as such, and (j) with respect to each of the foregoing entities in clauses (a) through (i), such entities' predecessors, successors and assigns, subsidiaries, affiliates, current and former shareholders, employees, agents, Representatives, and management companies, and such Persons' respective heirs, executors, estates, servants and nominees, in each case in their capacity as such.

"*Releasing Parties*" means collectively: (a) all Second Lien Lenders, (b) all Holders of Claims that are presumed to accept this Plan and that do not "opt out" of the releases set forth in Article X.C of this Plan, (c) all Holders of Claims or Interests that are presumed to reject this Plan that "opt-in" to the releases set forth in Article X.C of this Plan, and (d) the Released Parties.

"*Representatives*" means, with respect to a Person, such Person's current and former (i) officers, (ii) directors, (iii) managers, (iv) principals, (v) members, (vi) employees, (vii) agents, (viii) advisory board members, (ix) financial advisors, (x) partners, (xi) attorneys, (xii) accountants, (xiii) investment bankers, (xiv) consultants, (xv) representatives, and (xvi) other professionals, each in their capacity as such.

"*Sale Order*" means that certain *Order (A) Approving the Purchase Agreement; (B) Approving the Sale to the Buyer of the Acquired Assets of the Debtors Pursuant to Section 363 of the Bankruptcy Code Free and Clear of All Liens, Claims, Interests, and Encumbrances; (C) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code; (D) Authorizing the Debtors to Consummate Transactions Related to the Above; and (E) Granting Other Relief* entered on August 12, 2020 by the Bankruptcy Court [Docket No. 349].

"*Sale Transaction*" means the sale of substantially all of the Debtors' assets pursuant to the Sale Order.

"*Schedule of Assumed Contracts*" means the schedule of Executory Contracts or Unexpired Leases to be assumed by the Debtors, which schedule shall be Filed with the Plan Supplement.

"*Schedules*" means the schedules of assets and liabilities and the statement of financial affairs Filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

"*Second Lien Agents*" means, together, the Second Lien Term Loan A Agent and the Second Lien Term Loan B Agent.

"*Second Lien Credit Agreements*" means, collectively, the Second Lien Term Loan A Credit Agreement and the Second Lien Term Loan B Credit Agreement.

"*Second Lien Deficiency Claim*" means any Second Lien Term Loan Claim that is not a Secured Claim.

"*Second Lien Lender Fees*" means any and all accrued and documented fees or expenses (including all accrued and documented attorneys' fees) of each of the Second Lien Lenders, the Second Lien Agents, the DIP Lenders or the DIP Lender Representative incurred in connection with these Chapter 11 Cases through Confirmation.

"*Second Lien Lenders*" means, together, the Second Lien Term Loan A Lender and the Second Lien Term Loan B Lender.

"*Second Lien Term Loan A Agent*" means Wilmington Trust, National Association, as administrative agent and collateral agent under the Second Lien Term Loan A Credit Agreement.

"*Second Lien Term Loan A Credit Agreement*" means that certain Second Lien Credit Agreement, dated as of November 12, 2019, as amended, restated, amended and restated, supplemented or otherwise modified from time to time, by and between Debtor Lucky Brand Dungarees, LLC, Debtor LBD Intermediate Holdings, LLC, the Second Lien Term Loan A Agent, and the Second Lien Term Loan A Lender.

"*Second Lien Term Loan A Lender*" means Lucky Holdings JV, LLC, as lender under the Second Lien Term Loan A Credit Agreement.

"*Second Lien Term Loan B Agent*" means Clover Holdings II, LLC, as administrative agent and collateral agent under the Second Lien Term Loan B Credit Agreement.

"*Second Lien Term Loan B Credit Agreement*" means that certain Second Lien Credit Agreement, dated as of November 12, 2019 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time), by and between Debtor Lucky Brand Dungarees, LLC, Debtor LBD Intermediate Holdings, LLC, the Second Lien Term Loan B Agent, and the Second Lien Term Loan B Lender.

"*Second Lien Term Loan B Lender*" means Clover Holdings II, LLC, as lender under the Second Lien Term Loan B Credit Agreement.

"*Second Lien Term Loan Claims*" means Claims held by the Second Lien Lenders arising under the Second Lien Credit Agreements.

"*Section 510(b) Claim*" means any Claim arising from: (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

"*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable

law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code; or (b) otherwise Allowed pursuant to this Plan as a Secured Claim.

"*Secured Tax Claim*" means any unpaid Secured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"*Solicitation*" means the solicitation of votes on this Plan.

"*Solicitation Procedures*" means the procedures concerning Solicitation set forth in the Solicitation Procedures Motion.

"*Solicitation Procedures Motion*" means the *Motion of Debtors for Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to the Debtors' Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Herewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief.*

"*Statutory Fees*" means all fees and charges assessed against the Estates under section 1930, chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

"*Third-Party Release*" means the Releases by Holders of Claims and Interests as set forth in <u>Article X.C</u> herein.

"*Third Party Released Claims*" has the meaning set forth in <u>Article III.C</u> herein.

"*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

"*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"*Unimpaired*" means, with respect to a Claim, Interest or Class of Claims or Interests, not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

"*Voting Class*" means Class 3.

"*Voting Deadline*" means November 3, 2020.

"*Voting Record Date*" means September 29, 2020.

"*Wind Down*" means the process of winding down the Debtors' businesses and corporate entities after closing of the Sale Transaction.

"*Wind Down Budget*" means the budget setting forth (a) the estimated amounts of Allowed Administrative Claims, Other Priority Claims, Priority Tax Claims, and Other Secured Claims, in

each case against the Debtors, that may be paid under this Plan; and (b) the anticipated expenses of the Plan Administration Process from and after the Effective Date. The Wind Down Budget is Exhibit C to the Disclosure Statement.

"*Wind Down Reserve*" means a segregated account established by the Debtors into which Cash shall be deposited on or before the Effective Date, to fund the Wind Down Budget.

# ARTICLE II.

## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

*A.     Administrative Claims*

1.   General Administrative Claims

Except with respect to Administrative Claims that are Statutory Fees and except to the extent that a Holder of an Allowed Administrative Claim and the applicable Debtors agree to less favorable treatment for such Holder's Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall be paid in full in Cash on or as soon as reasonably practicable after the latest of: (a) the Effective Date; (b) the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable.   To the greatest degree possible, the Debtors shall pay Administrative Claims against the Debtors from funds in the Wind Down Reserve.

Except as otherwise provided in this Plan and section 503(b)(1)(D) of the Bankruptcy Code, unless previously Filed or paid, requests for payment of Administrative Claims must be Filed and served on the Plan Administrator pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order and the occurrence of the Effective Date (as applicable) no later than the Administrative Claims Bar Date; *provided*, that the foregoing shall not apply to Holders of Claims under section 503(b)(1)(D) of the Bankruptcy Code, the Bankruptcy Court or U.S. Trustee as the Holders of Administrative Claims, or Holders of Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code (filing procedures for the latter of which are set forth in the Claims Bar Date Order).   Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors and their respective Estates and property as of the Effective Date, absent order of the Bankruptcy Court to the contrary.   Nothing in this Article II.A shall limit, alter, or impair the terms and conditions of the Claims Bar Date Order with respect to the Claims Bar Date for Filing administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code.

Objections to such requests for Administrative Claims must be Filed and served on the Plan Administrator and the requesting party by the later of (a) one hundred and twenty (120) days after the Effective Date and (b) sixty (60) days after the Filing of the applicable request for payment

of Administrative Claims, if applicable, as the same may be modified or extended from time to time by Final Order of the Bankruptcy Court.

2.  Professional Fee Claims

All Entities seeking an award by the Bankruptcy Court of Professional Fee Claims (a) shall File their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date, to the extent a final application for such fees and expenses has not been Filed and Allowed, and (b) parties in interest shall have at least twenty-one (21) days after the filing of each final fee application to object to the same. To the extent not already paid, all Entities seeking an award by the Bankruptcy Court of Professional Fee Claims shall be paid in full from the Professional Fee Escrow Account in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of the Effective Date and the date upon which the order authorizing payment of the final fee application of any professional is entered or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Plan Administrator; *provided, however*, that no such fees or expense shall be paid absent order of the Bankruptcy Court allowing the same.  The Plan Administrator is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.  Notwithstanding anything to the contrary herein, Holders of Professional Fee Claims shall be paid solely from, and to the extent of amounts funded to, the Professional Fee Escrow Account (including amounts funded into the Professional Fee Escrow Account pursuant to the Approved Budget and/or the Wind-Down Budget), in each case, pursuant to the DIP Orders and in accordance with the amounts set forth for such claims in the Approved Budget and/or Wind-Down Budget, as applicable.

3.  Statutory Fees

All Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Debtors, and the Post-Effective Date Debtors, shall be jointly and severally liable to pay any and all Statutory Fees when due and payable which, to the greatest degree possible, such payments shall be made from the Wind Down Reserve by the Plan Administrator.  The Debtors shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee.  After the Effective Date, the Plan Administrator shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Disbursing Agent during the applicable period, attested to by an authorized representative of the Disbursing Agent.  Each and every one of the Debtors and the Post-Effective Date Debtors shall remain obligated to pay Statutory Fees  to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

*B.      Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors agree to less favorable treatment for such Holder's Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will be paid in full in Cash  on or as soon as reasonably practicable after the latest of: (a) the Effective Date; (b) the date such Priority Tax Claim is Allowed; and (c) the date such Allowed Priority Tax Claim becomes due and payable in accordance with non-bankruptcy law.  To the greatest degree possible, such payments shall be made from the Wind Down Reserve.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND INTERESTS

*A.      Summary*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest is also classified in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan, though proposed jointly, constitutes a separate plan proposed by each Debtor. Therefore, the classifications set forth in Article III.B herein apply separately with respect to each Plan proposed by each Debtor.  Subject to Article V.E. hereof, this joint Plan and the classifications set forth herein shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a substantive consolidation of any of the Debtors, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets, and, except as otherwise provided by or permitted under this Plan, all Debtors shall continue to exist as separate legal entities.  Notwithstanding the joint nature of this Plan, nothing herein shall permit or grant a party in interest in the Chapter 11 Case of one Debtor with standing, or the right to vote to accept or reject this Plan, in the Chapter 11 Case of another Debtor.  If there are no Claims or Interests in a particular Class for a particular Debtor, then such Class of Claims or Interests shall not exist for all purposes of this Plan for that Debtor.

If the Bankruptcy Court does not confirm this Plan with respect to one or more of the Debtors, it may still confirm this Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

Summary of Classification and Treatment of Classified Claims and Interests

| Class | Claim/Interest | Status | Voting Rights |
|:---:|:---|:---:|:---:|
| 1. | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2. | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3. | Second Lien Term Loan Claims | Impaired | Entitled to Vote |
| 4. | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 5. | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6. | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7. | Existing LBD Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Classification and Treatment of Claims and Interests*

1.  Class 1 – Other Priority Claims

    (a)    *Classification*: Class 1 consists of the Other Priority Claims.

    (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such Holder shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim, payable on the later of the (A) Effective Date and (B) the first Business Day after thirty (30) days from the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon as reasonably practicable thereafter.

    (c)    *Voting*:  Class 1 is an Unimpaired Class, and the Holders of Claims in Class 1 are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 1 are not entitled to vote to accept or reject this Plan.

22

2. <u>Class 2 – Other Secured Claims</u>

    (a)    *Classification*:  Class 2 consists of the Other Secured Claims.  To the extent that Other Secured Claims are Secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2.

    (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors or the Plan Administrator, (i) payment in full in Cash in full and final satisfaction of such Claim, payable on the later of the Effective Date and the first Business Day after thirty (30) days from the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon as reasonably practicable thereafter, (ii) delivery of the collateral securing such Allowed Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code, or (iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code.

    (c)    *Voting*:  Class 2 is an Unimpaired Class, and the Holders of Claims in Class 2 are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 2 are not entitled to vote to accept or reject this Plan.

3. <u>Class 3 – Second Lien Term Loan Claims</u>

    (a)    *Classification*:  Class 3 consists of the Second Lien Term Loan Claims.

    (b)    *Treatment*:  Holders of Second Lien Term Loan Claims shall receive a *pro rata* share of the Initial Class 3 Distribution and the Final Class 3 Distribution.

    (c)    *Voting*:  Class 3 is an Impaired Class, and the Holders of Claims in Class 3 are entitled to vote to accept or reject this Plan.

4. <u>Class 4 – General Unsecured Claims</u>

    (a)    *Classification*:  Class 4 consists of the General Unsecured Claims.

    (b)    *Treatment*:  In light of the fact that the Second Lien Term Loan Claims are Secured by valid and perfected Liens on all assets of the Debtors and are not anticipated to be satisfied in full, Holders of General Unsecured Claims shall not receive or retain any property under this Plan on account of such Claims.

    (c)    *Voting*:  Class 4 is an Impaired Class.  Holders of General Unsecured Claims will receive no Distribution under this Plan on account of such Claims and are thus deemed to have rejected this Plan pursuant to section 1126(g) of

the Bankruptcy Code and are, therefore, not entitled to vote to accept or reject this Plan.  However, Holders of Class 4 General Unsecured Claims are encouraged to read <u>Article V.D</u> of this Plan regarding such Holders' ability to participate in the Release Consideration.

5. <u>Class 5 – Intercompany Claims</u>

    (a)    *Classification*:  Class 5 consists of the Intercompany Claims.

    (b)    *Treatment*:  Holders of Intercompany Claims shall not receive or retain any property under this Plan on account of such Claims.

    (c)    *Voting*:  Class 5 is an Impaired Class.  Holders of Intercompany Claims will receive no Distribution under this Plan and are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and are, therefore, not entitled to vote to accept or reject this Plan.

6. <u>Class 6 – Intercompany Interests</u>

    (a)    *Classification*:  Class 6 consists of the Intercompany Interests.

    (b)    *Treatment*:  Upon the completion of the Wind Down pursuant to the Plan Administration Process, Intercompany Interests shall be cancelled, with the Holders of Intercompany Interests receiving no Distribution on account of such Intercompany Interests.

    (c)    *Voting*:  Class 6 is an Impaired Class.  Holders of Intercompany Interests will receive no Distribution under this Plan and are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and are, therefore, not entitled to vote to accept or reject this Plan.

7. <u>Class 7 – Existing LBD Interests</u>

    (a)    *Classification*:  Class 7 consists of the Existing LBD Interests.

    (b)    *Treatment*:  On the Effective Date, the Existing LBD Interests will be cancelled without further notice to, approval of or action by any Entity.

    (c)    *Voting*:  Class 7 is an Impaired Class.  Holders of Existing LBD Interests will receive no Distribution under this Plan and are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and are, therefore, not entitled to vote to accept or reject this Plan.

C.    *Special Provision Governing Unimpaired Claims*

Notwithstanding anything to the contrary in the Plan or other Definitive Documents, (i) each Unimpaired Claim shall not be deemed settled, satisfied, resolved, released,  barred or enjoined by any provision of the Plan and (ii) the property of the Debtors' Estates shall not be free

24

and clear of the right of the Holder of such Unimpaired Claim to enforce its contractual rights in respect of its Unimpaired Claim against the Post-Effective Date Debtors (including, for the avoidance of doubt, satisfying its Unimpaired Claim from such property, but solely to the extent the Holder of such Claim could have done so prior to the Petition Date), in each case, until such Claim has been (x) paid in full in accordance with applicable law, on terms agreed to between the Holder of such Claim and the Debtors or Post-Effective Date Debtors or in accordance with the terms and conditions of the particular transaction giving rise to such Claim, or (y) otherwise satisfied or disposed of as determined by a court of competent jurisdiction. The Debtors, the Post-Effective Date Debtors, the Plan Administrator, and any other Entity shall retain all defenses, counterclaims, rights to setoff and rights to recoupment, if any, as to Unimpaired Claims. For the avoidance of doubt, the foregoing limitation shall not apply to (i) any Claims or Causes of Action held by a Debtor, its Estate or any Post-Effective Date Debtor that are released pursuant to Article X.B of the Plan (the "*Debtor Released Claims*") or (ii) any Claims or Causes of Action held by any Releasing Party that are released pursuant to Article X.C of the Plan (the "*Third Party Released Claims*"); *provided*, that, for the avoidance of doubt, the Third Party Released Claims shall not include any right of the Holder of such Unimpaired Claim to enforce its contractual rights in respect of its Unimpaired Claim against the Post-Effective Date Debtors as set forth herein or to enforce its contractual rights against any Affiliate of the Debtors that is contractually liable along with a Post-Effective Date Debtor with respect to such Holder's Unimpaired Claim; *provided further*, that the release of any Third Party Released Claim against any of the Related Persons of the Debtors and/or Post-Effective Date Debtors shall not take effect until (x) the Holder of such Third Party Released Claim has been paid in full on account of its Unimpaired Claim in accordance with applicable law on terms agreed to between the Holder of such Claim and the Debtors or Post-Effective Date Debtors or in accordance with the terms and conditions of the particular transaction giving rise to such Claim or (y) such Holder's Unimpaired Claim has been otherwise satisfied or disposed of as determined by a court of competent jurisdiction. Debtor Released Claims and Third Party Released Claims shall be deemed settled, satisfied, resolved, released, barred and/or enjoined by the applicable provisions under, and pursuant to the express terms of, the Plan and other Definitive Documents on the Effective Date.

D.      *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a claim temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, will be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.      *Presumed Acceptance of Plan*

Classes 1 and 2 are Unimpaired under this Plan and are deemed to accept this Plan. Therefore, the Holders of Claims in such Classes are deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

*B.      Presumed Rejection of Plan*

Classes 4, 5, 6 and 7 are Impaired, and Holders of Claims or Interests in Classes 4, 5, 6 and 7 are not entitled to receive or retain any property under this Plan.  Accordingly, under section 1126(g) of the Bankruptcy Code, the votes of Holders of Claims or Interests in Classes 4, 5, 6 and 7 will not be solicited, and such Holders are deemed to reject this Plan.

*C.      Voting Class*

Class 3 is Impaired and entitled to vote under this Plan.  The Holders of Claims in Class 3 as of the Voting Record Date are entitled to vote to accept or reject this Plan.

*D.      Acceptance by Impaired Class of Claims*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted this Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class actually voting have voted to accept this Plan.

Pursuant to section 1126(d) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Interests has accepted this Plan if the Holders of at least two-thirds (2/3) in amount of the Allowed Interests in such Class actually have voted to accept this Plan.

*E.      Voting Class; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject this Plan, the Debtors shall request the Bankruptcy Court at the Confirmation Hearing to deem this Plan accepted by the Holders of such Claims or Interests in such Class.

*F.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

The Debtors shall seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify this Plan in accordance with Article XII hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

US-DOCS\118286705.9

A.    *Transactions Effective as of the Effective Date*

The transactions contemplated by this Plan shall be approved and effective as of the Effective Date, without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtors, their board of directors, their stockholders, or any other person or Entity.

B.    *Plan Administrator*

1.    Appointment.    The Person designated in the Plan Supplement shall serve as Plan Administrator for each of the Debtors.

2.    Authority.    Subject to Article V of this Plan, the Plan Administrator shall have the authority and right on behalf of each of the Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of this Plan, including, without limitation, to:

(a)    except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors; *provided, however,* that the Plan Administrator shall only have authority to object to Class 4 General Unsecured Claims of a Holder who (i) has timely returned (and has not revoked or rescinded) an Opt-In Release Form in accordance with the Solicitation Procedures and has checked the box therein to approve the releases set forth in Article X.C herein and (ii) has not objected to, or otherwise sought to impede, confirmation of this Plan, in each case, in the event that the Plan Administrator and Committee Trustee determine that the Release Consideration Trust shall not be formed;

(b)    make Distributions to Holders of Allowed Claims in accordance with this Plan;

(c)    exercise its reasonable business judgment to direct and control the Wind Down, liquidation, sale and/or abandoning of the remaining assets of the Debtors under this Plan and in accordance with applicable law as necessary to maximize Distributions to Holders of Allowed Claims;

(d)    to the extent Causes of Action constitute Plan Administration Assets, prosecute all such Causes of Action on behalf of the Debtors, elect not to pursue any such Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Debtors;

(e)    make payments to existing professionals who will continue to perform in their current capacities; *provided, however*, that no payments shall be made to any professional for services rendered or expenses incurred prior to the

Effective Date, unless such fees and expenses have been Allowed by order of the Bankruptcy Court;

(f)     retain and compensate, consistent with the Wind Down Budget, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Plan Administration Assets;

(g)     maintain the books and records and accounts of the Debtors;

(h)     invest Cash of the Debtors, including any Cash proceeds realized from the liquidation of any assets of the Debtors, including any Causes of Action, and any income earned thereon;

(i)     incur and pay reasonable and necessary expenses in connection with the performance of duties under this Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

(j)     take any and all actions on behalf of the Debtors to finalize the Purchase Price Allocation (as defined in the Asset Purchase Agreement) in accordance with the terms of the Asset Purchase Agreement;

(k)     receive any additional funds as a result of the approved Purchase Price Allocation and distribute any such funds (if any) to the Second Lien Lenders in connection with the Initial Class 3 Distribution or Final Class 3 Distribution, as applicable;

(l)     administer each Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its Estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Petition Date through the liquidation of such Debtor as determined under applicable tax laws, and (iii) representing the interest and account of each Debtor or its Estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(m)     prepare and File any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required hereunder, by any Governmental Unit or applicable law;

(n)     create the Release Consideration Trust upon the request of the Committee Trustee, appoint the Committee Trustee as the Release Consideration Trustee, pay the Committee Trustee Expenses, Release Consideration Trust Pre-Funding Expenses, and fund the Release Consideration Trust with the Release Consideration net of any Committee Trustee Expenses and Release Consideration Trust Pre-Funding Expenses;

(o)     pay Statutory Fees in accordance with Article II.A.3 of this Plan; and

28

(p)    perform other duties and functions that are consistent with the implementation of this Plan.

C.    *The Plan Administration Process*

On the Effective Date, the Debtors shall fund from their Cash on hand, including any remaining Net Sale Proceeds, (i) the Initial Class 3 Distribution and, to the extent not already funded, (ii) the Wind Down Reserve, which shall vest in the Debtors and their Estates pursuant to this Article V.C as Plan Administration Assets.  On the Effective Date, the Plan Administrator shall have authority over the Plan Administration Assets as a plan administration officer pursuant to the Plan Administration Agreement.  Except as otherwise provided in this Plan, as of the Effective Date, all assets that remain property of the Debtors' Estates after the closing of the Sale Transaction, including the Wind Down Reserve (the "***Plan Administration Assets***"), shall vest in the Debtors' Estates for purposes of liquidating the Estates.  As of the Effective Date, all assets vested as Plan Administration Assets and all assets dealt with in this Plan shall be free and clear of all Liens, Claims, and Interests but for the Prepetition Second Liens and except as otherwise further provided in this Plan or in the Confirmation Order.  Notwithstanding anything to the contrary in this Plan, the Plan Administration Assets shall not include the Professional Fee Escrow Account, but shall include a reversionary interest in any portion of the Professional Fee Escrow Account not used to satisfy Professional Fee Claims in accordance with the terms of this Plan.

On the Effective Date, the Plan Administrator shall also have the power, right, and responsibility to conduct the Plan Administration Process (including the Wind Down) and to take possession of all books, records, and files of the Debtors and the Estates and provide for the retention and storage of such books, records, and files until such time as the Plan Administrator determines that retention of same is no longer necessary or required.  The Plan Administrator is authorized and empowered to effect the dissolution of any of the Debtors as soon as practicable after the Effective Date without the need for any company action or approval, and neither the Debtors nor the Plan Administrator shall be required to pay any taxes or fees to cause such dissolution.  On the Effective Date or as soon thereafter as is reasonably practicable, the Plan Administrator shall wind down the affairs of the Debtors and file final tax returns for the Debtors.

Upon substantial completion of the Plan Administration Process, the Plan Administrator shall remit the Final Class 3 Distribution to Holders of Allowed Claims in Class 3 and, if created, fund the Release Consideration Trust with the Release Consideration (net of any Committee Trustee Expenses and Release Consideration Trust Pre-Funding Expenses).

D.    *Release Consideration*

The Debtors, the Second Lien Lenders, and the Committee have agreed to the amount of the aggregate Release Consideration to be distributed on a *pro rata* basis to those Holders of Allowed Claims in Class 4 that have timely returned (and has not revoked or rescinded) an Opt-In Release Form in accordance with the Solicitation Procedures and have checked the box therein to approve the releases set forth in Article X.C herein and have not objected to, or otherwise sought to impede, Confirmation of this Plan.  As such, although Holders of Allowed Class 4 General Unsecured Claims are not entitled to, and will not be receiving, Distributions under this Plan, such Holders may participate in the Release Consideration, pursuant to the terms of this section.  For

29

the avoidance of doubt, the Second Lien Lenders shall not participate in the Release Consideration on account of any Second Lien Deficiency Claim.

Upon a determination by the Plan Administrator, in consultation with the Second Lien Lenders and Committee Trustee, that the Release Consideration is likely to exceed $500,000, the Committee Trustee shall request that the Plan Administrator create the Release Consideration Trust, and the Committee Trustee shall be appointed Release Consideration Trustee. For the avoidance of doubt, no Release Consideration Trust shall be created unless the Plan Administrator determines, in consultation with the Second Lien Lenders and Committee Trustee, that the Release Consideration is likely to exceed $500,000.

Except to the extent Class 4 General Unsecured Claims have been previously Allowed, the Release Consideration Trustee shall control and effectuate the Class 4 General Unsecured Claims reconciliation process, including objecting to, seeking to subordinate, compromising or settling any and all Class 4 General Unsecured Claims. The Release Consideration Trustee shall determine, in his, her or its sole discretion, whether a Holder of such Claims is entitled to participate in the Release Consideration based on whether such Holder has (i) Filed a valid General Unsecured Claim, (ii) timely returned (and not revoked or rescinded) an Opt-In Release Form in accordance with the Solicitation Procedures and checked the box therein to approve the releases set forth in Article X.C herein, and (iii) not objected to, or otherwise impeded, confirmation of this Plan; *provided*, *however*, that the Release Consideration Trustee shall not permit any Holder of a Class 4 Claim to participate in the Release Consideration if such Holder (x) Files or otherwise asserts in these Chapter 11 Cases any objection to this Plan or (y) rescinds any Third Party Release given at or prior to the Effective Date.

Any Release Consideration Pre-Funding Expenses funded out of the Wind Down Reserve shall reduce, dollar-for-dollar, the Release Consideration funded into the Release Consideration Trust. After the Release Consideration Trust is funded, the Release Consideration Post-Funding Expenses shall be borne by the Release Consideration Trust. The Release Consideration Trustee shall have the same rights and powers as the Plan Administrator, as applicable, and as they pertain to the Release Consideration Trust. Article VII of this Plan, Provisions Governing Distributions, and Article VIII, Procedures for Resolving Contingent, Unliquidated, and Disputed Claims, shall apply, as applicable, to the Release Consideration Trust and Release Consideration Trustee, notwithstanding that the Release Consideration shall not otherwise be considered a Distribution under this Plan.

E.      *Wind-Up and Dissolution; Closing Cases of Debtor Affiliates*

On the Effective Date: (i) the Plan Administrator may dissolve any Debtor Affiliate and complete the winding up of such Debtor Affiliates, including withdrawing the Debtors' business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, business operations, without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the subject Debtor as provided herein, without the payment of any fee, franchise or similar tax, or charge; (ii) all claims

30

Filed or scheduled in the Debtor Affiliates' cases shall be deemed to have been Filed in the Chapter 11 Case of Lucky Brand; (iii) all existing Interests in the Debtors shall be deemed extinguished and cancelled; and (iv) the Plan Administrator may file a motion to close the Chapter 11 Cases of the Debtor Affiliates. In the discretion of the Debtors, after the Effective Date, Lucky Brand may engage in any other transaction in furtherance of this Plan. Any such transactions may be effective as of the Effective Date pursuant to the Confirmation Order without any further action by the stockholders, members, general or limited partners, or directors of any of the Debtors.

F.      *Corporate Action*

Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by this Plan (including any action to be undertaken by the Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

G.      *Exemption From Certain Transfer Taxes*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by any Debtor, or any transfer from any Entity pursuant to, in contemplation of, or in connection with this Plan or pursuant to (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

H.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

I.      *Directors, Managers, and Officers of the Debtors*

Following the Confirmation Date and prior to the occurrence of the Effective Date, the then-current officers, directors and managers of each of the Debtors shall continue in their respective capacities in accordance with the applicable by-laws or other organizational documents, and the Debtors shall execute such documents and take such other action as is necessary to effectuate the actions provided for in this Plan.

On and after the Effective Date, the Plan Administrator shall serve as the sole shareholder, interest holder, officer, director or manager of each of the Debtors, as applicable, under applicable state law.  The Plan Administrator, subject to the terms and conditions of this Plan and the Plan Administration Agreement, shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

J.      *Insurance Policies*

Before the Petition Date, the Debtors obtained the D&O Tail Coverage covering claims asserted against the current and former directors and officers, based upon acts prior to the Effective Date.  For six years following the Effective Date, directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the benefits of the D&O Tail Coverage, subject to and in accordance with the applicable terms and conditions.

On the Effective Date, the Debtors' rights under and to each Insurance Policy that is not a part of the Chubb Insurance Program (as defined in the next paragraph) shall vest in their Estates as part of the Plan Administration Assets.  Confirmation and Consummation of this Plan, and the vesting of such Insurance Policies in the Debtors' Estates, shall not impair or otherwise affect (x) any parties' rights to coverage thereunder, including in respect of any claims pending as of the Effective Date or pursued or made thereafter, (y) any available defenses of the Debtors or any Insurer under such Insurance Policies, or (z) the right of any Insurer or third party administrator under such Insurance Policy to File a Claim, consistent with the Claims Bar Date, for amounts due by the Debtors under such policy.

Notwithstanding anything to the contrary in the Disclosure Statement, this Plan, the Plan Supplement, the Confirmation Order, or any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): (a) on the Effective Date, the Debtors, jointly and severally, shall assume all of the Insurance Policies (collectively, the "***Chubb Insurance Program***") issued by ACE American Insurance Company, ACE Property & Casualty Insurance Company, ACE Fire Underwriters Insurance Company, Federal Insurance Company, or any of their U.S.-based affiliates and successors (collectively, "***Chubb***") in their entireties pursuant to sections 105 and 365 of the Bankruptcy Code, and the Chubb Insurance Program shall vest, unaltered, in the Plan Administrator; (b) except as set forth in sections (c) and (e) of this paragraph, nothing shall alter, modify, amend, affect, impair or otherwise affect any parties' rights and obligations, including rights to coverage, under the Chubb Insurance Program, including in respect of any claims pending as of the Effective Date or pursued or made thereafter,

32

or any available defenses of the Debtors or Chubb under the Chubb Insurance Program; (c) nothing alters or modifies the duty, if any, that Chubb has to pay claims covered by the Chubb Insurance Program and Chubb's right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Plan Administrator) therefor; *provided that* Chubb shall reimburse itself in full dollars solely from any letters of credit or other collateral and/or security provided by or on behalf of the Debtors in the ordinary course and pursuant to the terms of the Chubb Insurance Program; (d) Chubb shall not need to or be required to file or serve any objection to a proposed cure amount or a request, application, claim, proof or motion for payment or allowance of any Administrative Claim and shall not be subject to any bar date or similar deadline governing cure amounts, proofs of claim or Administrative Claims; *provided that* nothing in this provision shall limit or delay (i) the Plan Administrator from calculating the Release Consideration and (ii) the Plan Administrator and Release Consideration Trustee from making Distributions and other payments pursuant to this Plan and closing the Chapter 11 Cases; and (e) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in <u>Article X</u> of this Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit:  (I) claimants with valid workers' compensation claims or direct action claims against Chubb under applicable non-bankruptcy law to proceed with their claims; (II) Chubb to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against Chubb under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) Chubb to cancel any portion of the Chubb Insurance Program, and take other actions relating to the Chubb Insurance Program (including effectuating a setoff), to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Chubb Insurance Program; *provided that* nothing herein shall permit Chubb to cancel the Chubb Insurance Program solely on the basis of the Debtors' filing of these Chapter 11 Cases and Chubb shall not deny, refuse, alter, or delay coverage solely on any basis regarding or related to the Chapter 11 Cases, this Plan or any provision within this Plan; and  nothing in this section (III) shall permit Chubb to take any action in direct contravention of any obligation set forth elsewhere in this paragraph.  For the avoidance of doubt, Chubb shall return any remaining collateral and/or security, if any, to the Plan Administrator in the ordinary course and in accordance with the terms of the Chubb Insurance Program and none of the Debtors nor the Plan Administrator nor the Release Consideration Trustee are required to establish any reserves on account of any claims that may be asserted by Chubb pursuant to the Chubb Insurance Program.

*K.    Preservation of Rights of Action*

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in this Plan, or otherwise transferred to Purchaser and/or released pursuant to the Sale Transaction and Sale Order, or by a Bankruptcy Court order, the Debtors reserve any and all Causes of Action (including, without limitation, Causes of Action not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist).  On and after the Effective Date, the Plan Administrator may pursue such Causes of Action in its sole discretion.  No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Plan

Administrator will not pursue any and all available Causes of Action against them.  No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action as a consequence of the Confirmation or Consummation of this Plan, except in each case where such Causes of Action have been expressly waived, relinquished, released, compromised or settled in this Plan (including, without limitation, and for the avoidance of doubt, the Debtor Release contained in <u>Article X.B</u>, the Third-Party Release contained in <u>Article X.C</u> and the Exculpation contained in <u>Article X.D</u> hereof), or any other Final Order (including, without limitation, the Sale Order or the Confirmation Order) or otherwise transferred to Purchaser and/or released pursuant to the Sale Transaction and Sale Order.  Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Plan Administrator shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of this Plan itself shall be resolved only by Confirmation of this Plan itself.

L.      *Closing of the Lucky Brand Case*

After the Chapter 11 Case of Lucky Brand has been fully administered, the Plan Administrator shall seek authority from the Bankruptcy Court to close Lucky Brand's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein, as of the Effective Date, the Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases that (1) have not been previously rejected, assumed, or assumed and assigned, including in connection with the Sale Transaction, and are not the subject of a pending motion or notice to reject, assume, or assume and assign as of the Effective Date, (2) do not fall within the definition of the Chubb Insurance Program, (3) are not identified on the Schedule of Assumed Contracts to be Filed with the Plan Supplement, and (4) have not expired under their own terms prior to the Effective Date. This information shall be included in the Notice of the Effective Date.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the foregoing rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

B.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors

under such contracts or leases, to the extent such obligations continue under the terms of such contracts or leases or under applicable law.  The Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors, as applicable, from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

C.      *Rejection Damages Claims*

        All Claims arising from the rejection of Executory Contracts or Unexpired Leases under this Plan must be filed with the Balloting Agent and served upon the Plan Administrator and counsel for the Debtors, as applicable, within thirty (30) days after service of notice of the occurrence of the Effective Date, which notice shall set forth the date that such claims must be filed; *provided*, that the foregoing deadline shall apply only to Executory Contracts or Unexpired Leases that are rejected automatically by operation of Article VI.A above, and the deadline for filing any rejection damage Claims relating to any Executory Contracts or Unexpired Leases rejected pursuant to separate Bankruptcy Court order shall be the applicable deadline under such order, or if such order does not include such deadline, then the deadline under the Claims Bar Date Order.  Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a General Unsecured Claim against the applicable Debtor.

D.      *Nonoccurrence of Effective Date*

        In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions; Funding of Disbursements*

        1.      Timing and Calculation of Amounts to Be Distributed

        Unless otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the Distributions that this Plan provides for Allowed Claims in the applicable Class.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Article VII.  Holders of Claims shall not be entitled to postpetition interest, dividends, or accruals on the Distributions provided

for herein, regardless of whether such Distributions are delivered before, on or at any time after the Effective Date, unless otherwise expressly provided for in this Plan.

2. <u>Entitlement to Distributions</u>

On and after the Effective Date, the Disbursing Agent shall be authorized (but not directed) to recognize and deal only with those Holders of Claims listed on the Debtors' books and records as of the Plan Record Date. Accordingly, the Disbursing Agent will have no obligation to recognize the assignment, transfer or other disposition of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Plan Record Date, and will be entitled for all purposes herein to recognize and distribute securities, property, notices, and other documents only to those Holders of Allowed Claims who are Holders of such Claims (or participants therein) as of the close of business on the Plan Record Date.

3. <u>Funding of Disbursements</u>

To the greatest extent possible, all Distributions under this Plan to Holders of Allowed Claims (other than Allowed Class 3 Claims and Allowed Professional Fee Claims) shall be made from the Wind Down Reserve. Distributions on account of Allowed Professional Fee Claims shall be made from the Professional Fee Escrow Account.

B.    *Disbursing Agent*

Except as otherwise provided herein, all Distributions under this Plan shall be made by the Debtors as Disbursing Agent or such other Entity designated by the Debtors as a Disbursing Agent on the Effective Date, which may be the Plan Administrator.

1. <u>No Liability</u>

The Disbursing Agents shall only be required to act and make Distributions in accordance with the terms of this Plan. Except on account of gross negligence, fraud, illegality or willful misconduct, such parties shall have no (i) liability to any party for actions taken in accordance with this Plan or in reasonable reliance upon information provided to it in accordance with this Plan or (ii) obligation or liability for Distributions under this Plan to any party who does not hold a Claim against the Debtors as of the Plan Record Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of this Plan.

C.    *Distributions on Account of Claims Allowed After the Effective Date*

1. <u>Payments and Distributions on Disputed Claims</u>

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2. <u>Special Rules for Distributions to Holders of Disputed Claims</u>

US-DOCS\118286705.9

Notwithstanding any provision otherwise in this Plan and except as otherwise agreed to by the Disbursing Agent,  no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and such Disputed Claim becomes an Allowed Claim.  Any dividends or other Distributions arising from property distributed to Holders of Allowed Claims, in a Class and paid to such Holders under this Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim, in such Class that becomes an Allowed Claim after the date or dates that such dividends or other Distributions were earlier paid to Holders of Allowed Claims in such Class.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

    1.  Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make Distributions to Holders of Allowed Claims at the address for each such Holder as indicated on (a) such Holders' address on its Proof of Claim, if applicable, (b) such Holders' address listed on a notice Filed with the Bankruptcy Court, if applicable, or (c) if neither (a) or (b) are available, the address of record for the Holder listed on the Debtors' Schedules, or any more current address that is contained in the Debtors' books and records.

    2.  Undeliverable Distributions and Unclaimed Property

        (a)    Failure to Claim Undeliverable Distributions

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; *provided*, *however*, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the date the Distribution was returned.  After such date, all unclaimed property or interests in property shall revert to the Plan Administrator (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be forever barred.

        (b)    Failure to Present Checks

Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued.  Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within one hundred and eighty (180) days after the issuance of such check shall have its Claim for such un-negotiated check forever barred, estopped, and enjoined from asserting any such Claim against the Estates.  In such cases, any Cash held for payment on account of such Claims shall be Plan Administration Assets free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

*E.      Compliance with Tax Requirements/Allocations*

In connection with this Plan, to the extent applicable, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in this Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Disbursing Agent reserves the right to allocate all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

The Debtors, the Plan Administrator, Release Consideration Trustee, or the Disbursing Agent may require, as a condition to the receipt of a Distribution, that a Holder furnish to the Debtors, Plan Administrator, Release Consideration Trustee, or Disbursing Agent, as applicable, any necessary or appropriate tax documentation, including IRS Form W-8 or IRS Form W-9, as applicable to each Holder.  If any Holder fails to comply with such a request within three (3) months, such Distribution in respect of such Holder may be withheld as required by applicable law and in such event, shall be deemed an undeliverable Distribution and shall be treated in accordance with Article VII.D.2 hereof.  Without limitation of the generality of the foregoing, the Debtors, the Plan Administrator, Release Consideration Trustee, or the Disbursing Agent may condition any Distribution it may make to a Holder on such entity's receipt of such information and documentation as the Debtors, the Plan Administrator, Release Consideration Trustee, or the Disbursing Agent, as applicable, determines in its discretion is necessary to effect a Distribution in accordance with applicable law, including tax law, and withhold, as required by applicable law, a Distribution to any Holder who fails to provide such documentation and information.

*F.      Surrender of Cancelled Instruments or Securities*

As a condition precedent to receiving any Distribution on account of its Allowed Claim, each Holder of a Claim shall be deemed to have surrendered the certificates or other documentation underlying each such Claim, and all such surrendered certificates and other documentations shall be deemed to be canceled, except to the extent otherwise provided herein.

*G.      Claims Paid or Payable by Third Parties*

1.  Claims Paid by Third Parties

The Debtors, the Plan Administrator, or Release Consideration Trustee, as applicable, shall reduce in full a Claim, and such Claim shall be Disallowed upon order or approval of the Bankruptcy Court, after notice to the affected Claim Holder and an opportunity to be heard, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, the Plan Administrator, or Release Consideration Trustee.  To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from

a party that is not a Debtor, the Plan Administrator, or Release Consideration Trustee, on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Plan Administrator to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the Distribution Date.

    2.   <u>Claims Payable to Third Parties</u>

No Distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' Insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then upon payment from such Insurers, such Claim may be expunged or deemed satisfied in full upon an order or approval of the Bankruptcy Court after notice to the affected Claim Holder and an opportunity to be heard.

    3.   <u>Applicability of Insurance Policies</u>

Except as otherwise provided in this Plan, payments to Holders of Claims shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against the Insurers under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by Insurers.

*H.*    *Allocation of Plan Distributions between Principal and Interest*

To the extent that any Allowed Claim entitled to a Distribution under this Plan is comprised of indebtedness and accrued but unpaid interest (or original issue discount) thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest (or original issue discount).

*I.*    *Objection Deadline*

Except as otherwise set forth in this Plan, the Plan Administrator, the Release Consideration Trustee, and the Post-Effective Date Debtors shall File all objections to Disputed Claims or Interests, and shall File all motions to estimate Claims under section 502(c) of the Bankruptcy Code, on or before the Claims Objection Deadline; *provided*, *however*, that the Post-Effective Date Debtors may request that the Bankruptcy Court extend the Claims Objection Deadline, and the Plan Administrator, the Committee Trustee, and Release Consideration Trustee, as applicable, may request that the Bankruptcy Court extend the Claims Objection Deadline with respect to Class 4 Claims, upon notice to all affected Claim Holders.

*J.*    *De Minimis Distributions*

If an interim Distribution under this Plan to the Holder of an Allowed Claim would be less than $25.00, the Disbursing Agent may reserve such Distribution to the next subsequent

Distribution made to such Holder.  If a final Distribution under this Plan to the Holder of an Allowed Claim would be less than $25.00, the Disbursing Agent may cancel such Distribution and allocate such amount *pro rata* to any Allowed Claims with Distributions in excess of such threshold.  Any cancelled Distributions pursuant to this section shall be treated as unclaimed property under Article VII.D.2 of this Plan.  To the extent that the Plan Administrator or Release Consideration Trustee, respectively, determine that the expense of distributing any remaining assets would exceed the value of such remaining assets, the Plan Administrator or Release Consideration Trustee, in their discretion, can donate such assets to a charitable organization of its choice that is not related to the Disbursing Agent, the Plan Administrator, the Release Consideration Trustee, the Debtors, the members of the Committee, the DIP Lenders, the First Lien Lenders, the Second Lien Lenders, or any of their Representatives.

**ARTICLE VIII.**

**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      *Allowance and Disallowance of Claims*

Except as expressly provided herein or any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code, under this Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim under section 502 of the Bankruptcy Code.  Except as expressly provided in any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Sale Order and Confirmation Order), the Plan Administrator after Consummation will have and retain any and all rights and defenses the Debtors had with respect to any Claim as of the Petition Date.

B.      *Prosecution of Objections to Claims*

The Plan Administrator or Release Consideration Trustee, as applicable, shall have the authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan.  From and after the Effective Date, the Plan Administrator or Release Consideration Trustee, as applicable, may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Plan Administrator or Release Consideration Trustee, as applicable, may also resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law, as necessary; *provided*, *however*, that for the avoidance of doubt, the underlying Claim shall remain under the jurisdiction of the Bankruptcy Court and shall not be Disallowed other than by order of the Bankruptcy Court.

With respect to the foregoing duties of the Plan Administrator and Release Consideration Trustee, as applicable, to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims, the Plan Administrator or Release Consideration Trustee, as the case may be, shall stand in the same position as the Debtors with respect to any claim the Debtors may have to an attorney-client privilege, the work-product doctrine or any other privilege, and the Plan Administrator or Release Consideration Trustee, as applicable, shall succeed to all of the Debtors' rights to preserve, assert or waive any such privilege.

*C.      Estimation of Claims*

The Plan Administrator may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Plan Administrator has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the applicable Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.  Claims may be estimated and thereafter resolved by any permitted mechanism.

*D.      Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Plan Administrator shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any postpetition interest to be paid on account of such Claim.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

*A.      Conditions Precedent to Confirmation*

Unless satisfied or waived pursuant to the provisions of <u>Article IX.C</u> hereof, the following are conditions precedent to Confirmation of this Plan.

1.   All provisions, terms, and conditions hereof are approved in the Confirmation Order.

2.   The Confirmation Order shall have been entered by the Bankruptcy Court in form and substance acceptable to the Debtors.  The Confirmation Order shall provide that, among other things, the Plan Administrator is authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing and consummating the other contracts, instruments and other agreements or documents created in connection with or described in this Plan.

*B.      Conditions Precedent to the Effective Date*

Unless satisfied or waived pursuant to the provisions of <u>Article IX.C</u> hereof, the following are conditions precedent to the occurrence of the Effective Date of this Plan.

1.   This Plan, the Definitive Documents, and all other documents contemplated thereby, including any amendments, modifications, or supplements thereto, shall be acceptable to the Debtors.

2.   All Definitive Documents shall have been executed, delivered, and Filed (if applicable) and shall be in full force and effect, and all conditions precedent to effectiveness set forth in the Definitive Documents shall have been satisfied or waived in accordance with the terms thereof.

3.   The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate this Plan and the Definitive Documents and no order, injunction or judgment shall have been issued by any governmental authority or arbitrator to restrain, prohibit, enjoin or declare illegal the transactions contemplated by this Plan, and no law shall have been promulgated or enacted and be in effect that on a temporary or permanent basis restrains, enjoins, or invalidates the transactions contemplated by this Plan.

4.   The Confirmation Order shall have been entered by the Bankruptcy Court in form and substance acceptable to the Debtors and shall be a Final Order.  The Confirmation Order shall provide that, among other things, the Plan Administrator is authorized and directed to take all actions necessary or appropriate to consummate this Plan, including, without limitation, entering into, implementing and consummating the other contracts, instruments and other agreements or documents created in connection with or described in this Plan.

5.   The Plan Administration Agreement shall have been executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof.

6.   All actions, documents, certificates, and agreements necessary to implement this Plan shall (i) have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws and (ii) be in full force and effect.

7.   The Prior First Lien Payment shall have been distributed to the First Lien Agent, which payment shall be unconditionally and fully vested in, and not subject to any clawback from, the First Lien Agent.

8.   The Prior Second Lien Payment shall have been distributed to the Second Lien Agent, which payment shall be unconditionally and fully vested in, and not subject to any clawback from, the Second Lien Lenders.

9.   All Second Lien Lender Fees shall have been paid in full.

*C.*     *Waiver of Conditions*

Subject to section 1127 of the Bankruptcy Code, the conditions to Confirmation and Consummation of this Plan set forth in this <u>Article IX</u> may be waived by the Debtors in their sole discretion, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate this Plan.  The failure of the Debtors to exercise any of the

US-DOCS\118286705.9

foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

D.    *Effect of Non-Occurrence of Conditions to Confirmation or Consummation*

If the Confirmation or the Consummation of this Plan does not occur with respect to one or more of the Debtors, then this Plan will, with respect to such applicable Debtor or Debtors, be null and void in all respects and nothing contained in this Plan or the Disclosure Statement will: (1) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (3) constitute an Allowance of any Claim or Interest; or (4) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

## ARTICLE X.

## RELEASE, INJUNCTION AND RELATED PROVISIONS

A.    *General*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests, and controversies among the Debtors, the First Lien Agent, the First Lien Lenders, the Second Lien Agents, the Second Lien Lenders, the DIP Lenders, and the Committee. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable. In accordance with the provisions of this Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against them and Causes of Action against other Entities.

B.    *Debtor Release*

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the obligations contemplated by this Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Debtors, the Post-Effective Date Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns and any and all other Persons that may purport to assert any Causes of Action derivatively, by or through the foregoing Persons, from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or the**

43

Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Post-Effective Date Debtors, or the Estates would have been legally entitled to assert, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the Post-Effective Date Debtors, or their Estates, the Chapter 11 Cases, the Sale Transaction, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the Debtors' in or out-of-court restructuring and recapitalization efforts, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, the Asset Purchase Agreement, the Bidding Procedures Order, the Sale Transaction, the Sale Order, the Disclosure Statement, this Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation of votes with respect to this Plan, or any other act or omission.

Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any Person under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.  Moreover, the foregoing release shall have no effect on the liability of, or any Cause of Action against, any Entity that results from any act or omission that is determined in a Final Order to have constituted intentional fraud, criminal conduct, willful misconduct, or gross negligence.

C.    *Release by Holders of Claims and Interests*

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan, and the obligations contemplated by this Plan and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns and any and all other Persons that may purport to assert any Causes of Action derivatively, by or through the Releasing Parties, from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Post-Effective Date Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Releasing Parties or their estates, heirs, executors, administrators, successors, assigns, and any Persons claiming under

44

or through them would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Post-Effective Date Debtor (whether directly or derivatively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the Sale Transaction, the Post-Effective Date Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the Debtors' in or out-of-court restructuring and recapitalization efforts, intercompany transactions between or among a Debtor and another Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the documents in the Plan Supplement, the Asset Purchase Agreement, the Bidding Procedures Order, the Sale Transaction, the Sale Order, the Disclosure Statement, this Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, dissemination, filing, pursuit of consummation, or implementation thereof, the solicitation of votes with respect to this Plan, or any other act or omission.

Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any Person under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan. Moreover, the foregoing release shall have no effect on the liability of, or any Cause of Action against, any Entity that results from any act or omission that is determined in a Final Order to have constituted intentional fraud, criminal conduct, willful misconduct, or gross negligence.

D.     *Exculpation*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be exculpated from, any Claim or Cause of Action arising from and including the Petition Date through the Effective Date of this Plan, in connection with or arising out of the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of this Plan, making Distributions, implementing the Plan Administration Process, the Disclosure Statement, the Sale Transaction, the Asset Purchase Agreement, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors or the Post-Effective Date Debtors; or the transactions in furtherance of any of the foregoing; other than (i) Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that constitutes intentional fraud, criminal conduct, willful misconduct, or gross negligence, as determined by a Final Order, and (ii) the Exculpated Parties' rights and obligations under this Plan, the Plan Supplement documents, and the Confirmation Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

E.    *Permanent Injunction*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities that are released or exculpated in this Plan or the Confirmation Order, except there shall be no injunction of the defense of recoupment, or of any right of setoff against the Debtors to the extent timely asserted.

F.    *Setoffs*

Except as otherwise expressly provided for in this Plan, each Debtor and the Plan Administrator, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim or an Interest, may set off against any Allowed Claim or Allowed Interest and the Distributions to be made pursuant to this Plan on account of such Allowed Claim or Allowed Interest (before any Distribution is made on account of such Allowed Claim or Allowed Interest), any Claims, rights and Causes of Action of any nature that such Debtor or the Plan Administrator, as applicable, may hold against the Holder of such Allowed Claim or Allowed Interest, to the extent such Claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to this Plan or otherwise); *provided, however*, that the applicable Debtor or Plan Administrator shall provide notice to the Holder of the affected Claim or Interest of the set off, and such Holder shall retain any ability to challenge such set off in the Bankruptcy Court or any other court with jurisdiction; *provided further* that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to this Plan shall constitute a waiver or release by such Debtor of any such Claims, rights and Causes of Action that such Debtor may possess against such Holder.  In no event shall any Holder of Claims or Interests be entitled to set off any Claim or Interest against any claim, right or Cause of Action of the Debtor unless such Holder timely asserted setoff.  For the avoidance of doubt, the Filing of a Proof of Claim is sufficient to preserve a right of setoff hereunder.

G.    *Release of Liens*

Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to this Plan and, in the case of an Other Secured Claim, satisfaction in full of the portion of the Other Secured Claim that is Allowed, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successor and assigns.

H.    *Post-Effective Date Personnel*

In addition to (i) the exculpation provided in Article X.D of this Plan and (ii) the limitations of liability for the Plan Administrator provided in the Plan Administration Agreement and

46

hereunder, the directors, officers, managers, and employees of the Post-Effective Date Debtors serving after the Effective Date shall incur no personal liability to any Entity for any act or commission in connection with, arising out of, or relating to, their administration of this Plan and distributions under this Plan, any reserves created under this Plan, or in connection with the affairs of the Post-Effective Date Debtors unless related to an action or omission that is determined in a Final Order to have constituted gross negligence, fraud, illegality or willful misconduct. The Post-Effective Date Debtors shall indemnify such directors, officers, managers and employees serving after the Effective Date for any losses, claims, costs, damages or liabilities resulting from such Person's service in such a capacity at any time from and after the Petition Date, unless related to an action or omission that is determined in a Final Order to have constituted gross negligence, fraud, illegality or willful misconduct. The Bankruptcy Court shall retain exclusive jurisdiction over any action or proceeding in connection with, arising out of, or related to their service as directors, officers, or employees of the Post-Effective Date Debtors (from and after the Effective Date).

I.      *Integral Part of Plan*

Each of the provisions set forth in this Plan with respect to the settlement, release, exculpation, injunction, indemnification and insurance of, for or with respect to Claims and/or Causes of Action are an integral part of this Plan and essential to its implementation. Accordingly, each Entity that is a beneficiary of such provision shall have the right to independently seek to enforce such provision and such provision may not be amended, modified, or waived after the Effective Date without the prior written consent of such beneficiary.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will, on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and this Plan as legally permissible, including, without limitation, jurisdiction to:

1.   allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any such Claim or Interest;

2.   grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

3.   resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease and to adjudicate and, if necessary, liquidate, any Claims arising therefrom;

US-DOCS\118286705.9

4.  resolve any issues related to any matters adjudicated or otherwise subject to a Final Order in the Chapter 11 Cases;

5.  ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

6.  decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

7.  enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, the Plan Supplement or the Disclosure Statement;

8.  resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Person or Entity's obligations incurred in connection with this Plan;

9.  hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10. hear and determine disputes arising in connection with the interpretation, implementation, enforcement of the Asset Purchase Agreement or other document(s) governing or relating to the Asset Purchase Agreement;

11. issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with Consummation or enforcement of this Plan;

12. enforce the terms and conditions of this Plan, the Confirmation Order, and the Definitive Documents;

13. resolve any cases, controversies, suits or disputes with respect to the Release, the Exculpation, the indemnification and other provisions contained in Article X hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such provisions;

14. enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

15. resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any release or exculpation adopted in connection with this Plan; and

16. enter an order concluding or closing the Chapter 11 Cases.

US-DOCS\118286705.9

# ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A.    *Statutory Committee*

On the Effective Date, the current and former members of the Committee, and their respective officers, employees, counsel, advisors and agents, shall no longer have any authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases and the Committee will dissolve; *provided*, *however*, that following the Effective Date, the Committee will continue in existence and have standing and a right to be heard for the following limited purposes: (i) pursuing claims and final fee applications Filed pursuant to sections 330 and 331 of the Bankruptcy Code in accordance with <u>Article II.A</u>; and (ii) any appeals of the Confirmation Order or other appeal to which the Committee is a party.  Following the completion of the Committee's remaining duties set forth above, the Committee will be dissolved, and the retention or employment of the Committee's respective attorneys, accountants and other agents will terminate without further notice to, or action by, any Entity.  Upon dissolution of the Committee, the Committee Trustee shall be appointed and shall determine whether to request from the Plan Administrator creation of the Release Consideration Trust.  The Committee Trustee shall be entitled to Committee Trustee Expenses.  In the event the Release Consideration Trust is created, the Committee Trustee shall be appointed Release Consideration Trustee and the Release Consideration Trustee shall be entitled to Release Consideration Trust Expenses.

B.    *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in this Plan: (a) the Debtors reserve the right, after consultation with the Second Lien Lenders and the Committee, and in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order in accordance with section 1127(a) of the Bankruptcy Code and (b) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, and after consultation with the Second Lien Lenders and the Committee, amend or modify this Plan in accordance with section 1127(b) of the Bankruptcy Code.  A Holder of a Claim that has accepted this Plan will be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

C.    *Revocation or Withdrawal of Plan*

The Debtors reserve the right, after consultation with the Second Lien Lenders and the Committee, to revoke or withdraw this Plan prior to the Effective Date and/or to File subsequent chapter 11 plans, with respect to one or more of the Debtors.  If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation of this Plan does not occur with respect to one or more of the Debtors, then with respect to the applicable Debtor or Debtors for which this Plan was revoked or withdrawn or for which Confirmation or Consummation of this Plan did not occur: (1) this Plan will be null and void in all respects; (2) any settlement or compromise, release or exculpation embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant hereto will be

49

deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan will: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the applicable Debtors or any other Entity; (b) prejudice in any manner the rights of the applicable Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the applicable Debtors or any other Entity.

D.      *Successors and Assigns*

This Plan will be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, other parties-in-interest, and their respective heirs, executors, administrators, successors, and assigns.  The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

E.      *Reservation of Rights*

Except as expressly set forth herein, this Plan will have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is Consummated.  Neither the Filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to this Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the Holders of Claims or Interests or other Entities; or (2) any Holder of a Claim or an Interest or other Entity prior to the Effective Date.

F.      *Further Assurances*

The Debtors, all Holders of Claims receiving Distributions hereunder, and all other Entities will, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.

G.      *Severability*

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, and such term or provision will then be applicable as altered or interpreted by the Bankruptcy Court.  Notwithstanding any such holding, alteration or interpretation by the Bankruptcy Court, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

H.    *Service of Documents*

Any notice, direction or other communication given regarding the matters contemplated by this Plan (each, a "***Notice***") must be in writing, sent by personal delivery, electronic mail, courier or facsimile and addressed as follows:

**If to the Debtors**:

Lucky Brand Dungarees, LLC
540 South Santa Fe Ave.
Los Angeles, CA 90013
Attn: Mark A. Renzi
         Kanako Miyake
         Andrew Nolan
Telephone:  (213) 798-4413
Facsimile:  (213) 559-8497
Email:  mrenzi@thinkbrg.com
         kmiyake@luckybrand.com
         anolan@thinkbrg.com

with a copy to:

Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Attn:  Ted A. Dillman
         Christina M. Craige
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:  Ted.Dillman@lw.com
         Chris.Craige@lw.com

**If to the Committee**:

> Pachulski Stang Ziehl & Jones LLP
> 919 N Market Street, 17th Floor
> Wilmington, DE 19801
> Attn:  Bradford J. Sandler
>           Colin R. Robinson
>           Paul J. Labov
> Telephone:  (302) 652-4100
> Facsimile:   (302) 652-4400
> Email:  bsandler@pszjlaw.com
>           crobinson@pszjlaw.com
>           plabov@pszjlaw.com

A Notice is deemed to be given and received (a) if sent by personal delivery or courier, on the date of delivery if it is a Business Day and the delivery was made prior to 4:00 p.m. (local time in place of receipt) and otherwise on the next Business Day, or (b) if sent by facsimile, on the Business Day following the date of confirmation of transmission by the originating facsimile, or (c) if sent by electronic mail, when the sender receives an email from the recipient acknowledging receipt, provided that an automatic "read receipt" does not constitute acknowledgment of an email for purposes of this Section.  Any party may change its address for service from time to time by providing a Notice in accordance with the foregoing.  Any element of a party's address that is not specifically changed in a Notice will be assumed not to be changed.  Sending a copy of a Notice to a party's legal counsel as contemplated above is for information purposes only and does not constitute delivery of the Notice to that party.  The failure to send a copy of a Notice to legal counsel does not invalidate delivery of that Notice to a party.

I.      *Governing Law*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that a Definitive Document or an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, the laws of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

J.      *Tax Reporting and Compliance*

The Debtors are hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

K.      *Schedules*

All exhibits and schedules to this Plan, including the Exhibits and Plan Schedules, are incorporated herein and are a part of this Plan as if set forth in full herein.

L.    *Conflicts*

Except as set forth in this Plan, to the extent that any provision of the Disclosure Statement, or any other Definitive Document (apart from the Plan and the Confirmation Order), or any order (other than the Confirmation Order or the Sale Order), or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing, conflicts with or is in any way inconsistent with any provision of this Plan, this Plan shall govern and control; *provided*, that, in the event of any conflict with any provision of this Plan and/or the Confirmation Order with respect to the Sale Transaction, on the one hand, and the Sale Order, on the other hand, the Sale Order shall govern. In the event of a conflict between any provision of this Plan or any of the other Definitive Documents (apart from the Confirmation Order) on the one hand, and the Confirmation Order on the other, the Confirmation Order shall govern and control.

M.    *No Strict Construction*

This Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors, the Second Lien Lenders, the Committee, and their respective professionals. Each of the foregoing was represented by counsel of its choice who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, this Plan, the Disclosure Statement, the Exhibits and the Plan Schedules, and the agreements and documents ancillary or related thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "*contra proferentem*" or other rule of strict construction will not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, the Exhibits or the Plan Schedules, or the documents ancillary and related thereto.

N.    *Entire Agreement*

Except as otherwise provided herein or therein, this Plan and the Definitive Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan and the Definitive Documents.

O.    *2002 Notice Parties*

After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed a renewed request after the Effective Date  to receive documents pursuant to Bankruptcy Rule 2002, provided that the Notice of the Effective Date is served on all parties who have filed a request for notice under Bankruptcy Rule 2002 prior to the Effective Date, and such notice informs all such parties that they must file a renewed request after the Effective Date to receive documents pursuant to Bankruptcy Rule 2002 going forward.

US-DOCS\118286705.9

Respectfully submitted, as of the date first set forth above,

**Lucky Brand Dungarees, LLC**
**(on behalf of itself and all other Debtors)**

By:      */s/ Mark A. Renzi*
Name:   Mark A. Renzi
Title:    Chief Restructuring Officer

54